[No. 10819–4–II.   Division Two.   April 18, 1988.]

THE ESTATE OF BERNARD A. FRIEDMAN, ET AL, *Appellants,* v. PIERCE COUNTY, *Respondent.*

---

*Timothy J. Whitters, Patricia K. Schafer,* and *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim,* for appellants.

*Joseph F. Quinn* (of *McCormick, Hoffman, Rees, Faubion & Quinn, P.S.*), Special Deputy Prosecuting Attorney, for respondent.

WORSWICK, J.—A landowner who, because of a restrictive governmental regulation, is deprived of the economically reasonable use of his land, may be entitled to compensation for an inverse taking. *See Agins v. Tiburon,* 447 U.S. 255, 65 L. Ed. 2d 106, 100 S. Ct. 2138 (1980). However, the landowner first must show that he has applied for permission for such use and has been refused, or that application would be futile. *Orion Corp. v. State,* 103 Wn.2d 441, 693 P.2d 1369 (1985).

The landowners in this case, individuals styling themselves as Chambers Creek Joint Venture, and Western Savings and Loan Association, a corporation, appeal a summary judgment dismissing their inverse taking claim against Pierce County because of their failure to make such an application. They claim that an application would have been futile. We affirm, holding that the landowners were required to, but did not, show that application would have been futile as a matter of law.

Soon after Pierce County adopted its planned unit development resolution in 1965, the Pierce County Commissioners approved the Oakbrook Planned Unit Development. The approval resolution delineated the major uses as multi–family dwelling areas, a shopping center, churches

and an elementary school, an 18–hole golf course, parks and other open space green areas.

The landowners' property is located in Chambers Creek Canyon, and is part of the Oakbrook PUD as originally established. Two separate parcels are involved. The Chambers Creek Joint Venture owns approximately 80 acres of undeveloped land adjacent to the Oakbrook Townhouses. Western Savings and Loan Association owns a parcel of approximately 72 acres located west of the joint venture's parcel. Both parcels were designated as open space in the Oakbrook PUD resolution, and generally have been so considered by Pierce County planning officials and members of the public ever since.

In 1968, a representative of the then owner of one of the parcels applied for modification of the Oakbrook PUD master plan to change the open space designation to "hillside residential," to allow development of a subdivision. That modification was rejected by the planning commission, and the application was not pursued.

The landowners acquired their parcels in and after 1973. Their title derives, directly or indirectly (the record is not clear), from the original Oakbrook PUD developers. In 1981, Chambers Creek Joint Venture submitted applications to Pierce County to amend the open space designation, remove it altogether, or declare that the designation was never properly adopted as part of the Oakbrook PUD.[1] The joint venture also submitted applications for a 48–unit multi–family housing project and a 152–unit apartment complex. The 152–unit project was approved and is not a part of this litigation. After extensive hearings in 1982, the hearing examiner refused to amend the PUD open space designation and denied the 48–unit application. Chambers

---

[1] A PUD established under the Pierce County zoning code is subject to amendment, but the process requires application, notice, hearings and appeals as if an original application were being made. Pierce County zoning code 9.77.181. This procedure is exclusive and mandatory. *Hatfield v. Greco,* 87 Wn.2d 780, 782, 557 P.2d 340 (1976).

Creek Joint Venture unsuccessfully appealed both issues to the county council.

In December 1983, the landowners filed this action in Pierce County Superior Court. The pleadings included a complaint for declaratory judgment, a petition for writ of certiorari, and a complaint for damages for an inverse taking. The trial court agreed to divide the case into two phases. The first phase, relating only to the declaratory judgment and writ of certiorari claims, came on for trial in November 1985. Before trial, the landowners' attorney abandoned the claim relating to the 48–unit project, leaving for trial only the question of whether the County's refusal to amend the open space designation in the Oakbrook PUD, or to declare it invalid, was arbitrary and capricious or contrary to law. The landowners sought a declaratory judgment that the land in question had not properly been designated as open space. The result, had they succeeded, would have left the land undesignated in the PUD and subject only to the underlying zoning (SR–9). After trial, the court on December 9, 1985, entered a final judgment dismissing the complaint for declaratory judgment and quashing the writ of certiorari.[2] The second trial, contemplated when the case was divided, would have dealt only with the question whether Pierce County had taken the landowners' property without just compensation because of its refusal to alter the open space designation. However, the summary judgment disposed of the need for a second trial.

It is important to note here that that issues presented at the first trial, and correspondingly the issue that would have been examined at the second trial, did not involve the rejection of, or refusal to consider, any specific development proposal. The landowners concede that they made no such proposal, and they do not contend that there is no legally, as opposed to factually, adequate avenue for seeking administrative relief. *See Orion Corp.*, 103 Wn.2d at 458.

---

[2]The landowners also attempt to appeal that ruling now. They are too late. RAP 5.2(a).

It is axiomatic that agency land–use determinations cannot be challenged in the courts until the challenger has first exhausted administrative remedies. *South Hollywood Hills Citizens Ass'n v. King Cy.*, 101 Wn.2d 68, 677 P.2d 114 (1984). However, the exhaustion doctrine will not bar access to the courts to one who can demonstrate that the pursuit of such remedies would be futile. *Orion Corp. v. State, supra.* We concern ourselves here with what a landowner must do to show factual futility. We hold that the requirement of exhaustion of administrative remedies can be overcome only by a showing, equivalent to that required for a successful summary judgment motion, that the pursuit of administrative remedies would be futile. The issue is to be decided by the court and is not to be submitted to a jury.

The landowners contend that summary judgment should have been denied in this case because they demonstrated the existence of a factual dispute on the issue of futility, arguing that they are entitled to try this issue to a jury along with the remainder of their damage claim. They offer *Orion Corp. v. State, supra,* as authority for their position, asserting that the disposition in *Orion* contemplated just such a procedure. We disagree.

The assertion concerning the procedure contemplated by *Orion* is quickly dispatched. In describing the case, the court said:

> The defendants moved for summary judgment, arguing principally that Orion had failed to exhaust available administrative remedies. The trial court denied the defendants' motion, *holding that Orion had proven conclusively, by uncontroverted facts, that pursuing the available administrative procedures would be futile* and impractical. *We* granted discretionary review and *affirm.*

(Italics ours.) *Orion,* 103 Wn.2d at 443. The court disposed of the case by remanding for trial on the merits of Orion's damage claim.

*Orion* does not support, but is contrary to, what is apparently the landowners' basic contention: that whenever

a landowner can raise a factual dispute concerning the *possibility* that an application would be rejected, the court cannot dismiss an inverse taking claim for failure to exhaust administrative remedies. *Orion* restates and reinforces the strong bias in favor of requiring exhaustion of administrative remedies in these cases. *Orion,* 103 Wn.2d at 456. It stresses the rarity of factual futility as an exception to the exhaustion requirement, but points out that this exception can be established in unique circumstances. *Orion,* 103 Wn.2d at 458. The circumstances in the case before us are not at all unique.

The evidence in this record, such as it is, on the futility issue shows no more than a general belief of some Pierce County officials that the land in question should remain undeveloped. However, nothing in the record suggests that the County had foreclosed development, or that anyone in a position to make a decision had a closed mind on the subject. Indeed, there is ample evidence that the County would be receptive to a development proposal that took into account the many valid concerns for this environmentally sensitive area.

*Orion* illustrates what a landowner *can* do to establish factual futility. However, the *Orion* court did not need to make explicit that what Orion Corporation did was what a landowner *must* do. We need to do so, because this case involves the converse of *Orion*: A landowner's inadequate effort. We hold that a landowner *must* do what was done in *Orion*: show by uncontroverted evidence that the pursuit of administrative remedies would be futile.[3] Absent such a showing, exhaustion of administrative remedies is a condition precedent to an inverse taking claim.

---

[3]California follows a similar principle as one of four exceptions to the requirement of exhaustion of administrative remedies. Such remedies need not be pursued where the applicant can show positively what the agency's decision would be. *Ogo Assocs. v. Torrance,* 37 Cal. App. 3d 830, 112 Cal. Rptr. 761 (1974). *Cf. Prisk v. Poulsbo,* 46 Wn. App. 793, 732 P.2d 1013, *review denied,* 108 Wn.2d 1020 (1987).

*Orion* stands for the proposition that factual futility is rarely found, and then only on unique facts. Our procedural holding follows from the strength of that proposition and is fortified by established principles.

First, it is evident that *Orion* imposes a heightened standard of proof on one who claims that the pursuit of administrative remedies would be factually futile. It follows that, by analogy to defamation cases involving media defendants, a landowner would have a greater than ordinary burden to defeat summary judgment, even if factual futility was ultimately triable by a jury. *See Sims v. KIRO, Inc.,* 20 Wn. App. 229, 237, 580 P.2d 642, *review denied,* 91 Wn.2d 1007 (1978), *cert. denied,* 441 U.S. 945 (1979); *cf. Herron v. Tribune Pub'g Co.,* 108 Wn.2d 162, 170, 736 P.2d 249 (1987). Second, and more importantly, some factual issues are so intertwined with arcane legal principles that, for policy reasons, they must remain within the province of the court. *See Hartley v. State,* 103 Wn.2d 768, 775, 698 P.2d 77 (1985); *Herskovits v. Group Health Coop.,* 99 Wn.2d 609, 636, 664 P.2d 474 (1983) (Brachtenbach, J., dissenting). We believe it self–evident that a claim of factual futility as an exception to the requirement of exhaustion of administrative remedies presents just such an issue. This field is, at best, labyrinthine for judges. Little imagination is required to foretell the potential horrors of submitting this largely collateral problem to a jury.

Affirmed.

ALEXANDER, A.C.J., and PETRICH, J., concur.

Review granted by Supreme Court September 1, 1988.