[No. 40717-5-II.   Division Two.   November 8, 2011.]

KARL J. THUN ET AL., *Appellants*, v. THE CITY OF BONNEY LAKE, *Respondent*.

*Warren J. Daheim* and *Margaret Y. Archer* (of *Gordon Thomas Honeywell LLP*), for appellants.

*Kathleen J. Haggard* (of *Dionne & Rorick LLP*) and *Michael C. Walter* (of *Keating Bucklin McCormack Inc.*), for respondent.

*Daniel A. Himebaugh* and *Brian T. Hodges* on behalf of Pacific Legal Foundation, amicus curiae.

¶1 WORSWICK, A.C.J. — The ripeness doctrine ensures that regulatory takings claims are not litigated before they are fully developed at the local level. Because land use decisions involve a great deal of government discretion,

courts must be careful not to weigh in on a dispute until the government has had an opportunity to render a final decision regarding the use of the land in question. Although we recognize that cases may be ripe when further administrative proceedings would be futile, we hold that takings plaintiffs Karl and Virginia Thun, Thomas Pavolka, Virginia Leslie Revocable Trust, and William and Louise Leslie Family Revocable Trust (Thun)[1] have not shown futility, or ripeness, here. Accordingly, we affirm summary judgment in favor of the city of Bonney Lake (City).

## FACTS

¶2 Thun owns 37 acres of land in the city of Bonney Lake. This land was originally zoned "C-2" (commercial), permitting 20 housing units per acre. On September 13, 2005, a developer submitted a site plan application for a 575-unit condominium building on Thun's property. *Abbey Rd. Grp., LLC v. City of Bonney Lake*, 167 Wn.2d 242, 248, 218 P.3d 180 (2009). On the same day, the City rezoned approximately 30 of Thun's 37 acres as "RC-5" (residential/ conservation), permitting only one housing unit per 20 acres.[2] City officials have no discretion to vary this density. BONNEY LAKE MUNICIPAL CODE 14.110.010(A)(3). The City denied the permit for the condominium building under the new zoning ordinance, and a hearing examiner ruled that the developer's rights under the previous zoning ordinance had not vested. *Abbey Rd.*, 167 Wn.2d at 248. The developer appealed this decision, eventually reaching the Washington Supreme Court, which agreed that the developer's rights had not vested because the site plan application was not a valid building permit application. *Abbey Rd.*, 167 Wn.2d at 259-60. As of the date of oral argument in this case, May 10,

---

[1] For brevity, we collectively refer to the plaintiffs as "Thun," intending no disrespect.

[2] The parties have not determined exactly how much of Thun's land was affected by the rezone. But the parties agree that between five and seven acres are still zoned C-2 (commercial).

2011, Thun had not submitted a valid building permit application to develop his land.

¶3 While the Supreme Court case was pending, Thun filed this lawsuit against the City, claiming that the rezone was an unconstitutional taking under article I, section 16 of the Washington Constitution. The City moved for summary judgment, arguing that Thun's takings claim was not ripe for review. The City contended that to show ripeness, Thun was required to submit a building permit application to clarify exactly what could be built on his land under existing regulations.

¶4 Thun responded that he did not need a permit application to show ripeness because the effect of the challenged regulation was clear and the City had no discretion to grant a variance. Thun also submitted the declaration of developer Giles Hulsmann to support Thun's argument that developing the land was not economically feasible under the RC-5 zoning. Hulsmann prepared two preliminary site plans under the RC-5 zoning, one showing smaller clustered lots and the other showing large lots covering the entire property. Hulsmann's plans assumed that 30 of Thun's 37 acres were covered by the rezone and assessed the cost of developing only the 30 RC-5 acres. Hulsmann asserted that the land's high development costs made development unfeasible under either plan, "with or without compatible neighborhood commercial uses on the commercial piece."[3] Clerk's Papers at 495. In a deposition, the City's planning director testified that clustered development or large lots would be a reasonable, economically viable use of the land, without offering any facts to support this assertion. The superior court granted summary judgment and dismissed Thun's complaint.

---

[3] According to Hulsmann's analysis, it would cost $6,674 per unit to develop a 575-unit condominium building, $420,670 per lot to develop the land as large residential lots, and $331,378 per lot to develop the land as clustered residential lots.

## ANALYSIS

### I. STANDARD OF REVIEW

¶5 We review a grant of summary judgment de novo. *Briggs v. Nova Servs.*, 166 Wn.2d 794, 801, 213 P.3d 910 (2009). Summary judgment is appropriate where, viewing all facts and resulting inferences most favorably to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Briggs*, 166 Wn.2d at 801; CR 56(c).

■■ ¶6 The sole question presented is whether Thun's takings claim was ripe for review. As the material facts are undisputed, this is a legal question. We employ de novo review of legal questions decided on summary judgment. *M.W. v. Dep't of Soc. & Health Servs.*, 149 Wn.2d 589, 595, 70 P.3d 954 (2003).

### II. REGULATORY TAKINGS CLAIM

¶7 Article I, section 16 of the Washington Constitution provides, "No private property shall be taken or damaged for public or private use without just compensation having first been made." Under this section, the State effects an unconstitutional regulatory taking when it enacts a regulation that goes "too far" in infringing the plaintiff's property rights. *See, e.g., Orion Corp. v. State*, 109 Wn.2d 621, 646, 747 P.2d 1062 (1987) (*Orion* II). There are two types of takings claims: "facial" and "as applied." *Peste v. Mason County*, 133 Wn. App. 456, 471, 136 P.3d 140 (2006), *review denied*, 159 Wn.2d 1013 (2007).

¶8 To make out a "facial" takings claim, the plaintiff must first meet the threshold inquiry to show that the regulation destroys a fundamental attribute of property ownership. *Peste*, 133 Wn. App. at 471-72 (citing *Guimont v. Clarke*, 121 Wn.2d 586, 605, 854 P.2d 1 (1993) (*Guimont* I)). This threshold is satisfied by showing that the regulation

constitutes a physical invasion of the property by the government or by showing that the regulation denies all economically viable use of the property. *Guimont I*, 121 Wn.2d at 602. "A facial challenge in which the court determines a regulation denies all economically viable use of property 'should prove to be a relatively rare occurrence.'" *Guimont I*, 121 Wn.2d at 606 (quoting *Presbytery of Seattle v. King County*, 114 Wn.2d 320, 335, 787 P.2d 907 (1990)).

¶9 If the plaintiff cannot show that the regulation destroys a fundamental attribute of property ownership, he must bring an "as applied" takings claim. *Peste*, 133 Wn. App. at 472-73. To make such a claim, he must show that the challenged regulation goes beyond preventing a public harm to confer a public benefit, or infringes on (rather than destroys) a fundamental attribute of ownership. *Guimont v. City of Seattle*, 77 Wn. App. 74, 81, 896 P.2d 70 (*Guimont II*), *review denied*, 127 Wn.2d 1023 (1995). If the regulation confers a public benefit or infringes on a fundamental attribute of ownership, we analyze whether the regulation advances a legitimate state interest.[4] *Guimont II*, 77 Wn. App. at 81. If it does not, there has been a taking. *Guimont I*, 121 Wn.2d at 604.

¶10 If the regulation advances a legitimate state interest, we balance the public interest against the economic impact on the landowner. *Guimont I*, 121 Wn.2d at 604. We consider the three *Penn Central*[5] factors to analyze the economic impact on the landowner: (1) the regulation's economic impact on the property, (2) the extent of the regulation's interference with investment-backed expecta-

---

[4] As Division One of this court has noted, the United States Supreme Court has eliminated this factor from its constitutional takings analysis, but the effect of this decision on takings claims under the Washington Constitution is as yet undecided. *City of Des Moines v. Gray Bus., LLC*, 130 Wn. App. 600, 612 n.33, 124 P.3d 324 (2005) (citing *Lingle v. Chevron U.S.A, Inc.*, 544 U.S. 528, 543, 125 S. Ct. 2074, 161 L. Ed. 2d 876 (2005)).

[5] *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978).

tions, and (3) the character of the government action. *Guimont* I, 121 Wn.2d at 604. An unconstitutional taking has occurred if the economic impact on the landowner outweighs the public benefit conferred. *Guimont* II, 77 Wn. App. at 81. This is known as a "partial taking" because while there may remain a number of uses for the plaintiff's land, the government has nevertheless gone too far in restricting the property owner's rights. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 326, 122 S. Ct. 1465, 152 L. Ed. 2d 517 (2002) (noting that the United States Supreme Court has not adopted per se rules in partial regulatory takings claims, but instead relies on a fact-dependent analysis of the *Penn Central* factors).

¶11 A plaintiff need not show ripeness to bring a "facial" takings claim because such a claim alleges that the challenged regulation constitutes a taking of *any* land to which it is applied. *See Guimont* I, 121 Wn.2d at 606 n.8. But Thun brings an "as applied" takings claim, alleging that because of the high development costs on his land, the City's rezone constitutes a regulatory taking of his particular parcel. As such, he must show that his claim is ripe for review.

## III. RIPENESS

A. *In General*

¶12 In federal courts, the doctrine of ripeness seeks "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977). The question of ripeness "turns on 'the fitness of the issues

for judicial decision' and 'the hardship to the parties of withholding court consideration.'" *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201, 103 S. Ct. 1713, 75 L. Ed. 2d 752 (1983) (quoting *Abbott Labs.*, 387 U.S. at 149).

¶13 The United States Supreme Court has developed a more specific ripeness doctrine that applies to Fifth Amendment takings claims. This doctrine consists of two distinct parts: the "final decision" requirement and the "state procedures" requirement. *See Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 733-34, 117 S. Ct. 1659, 137 L. Ed. 2d 980 (1997). Under the "final decision" requirement, in order for a takings claim to be ripe, the plaintiff must give the relevant administrative agency an opportunity to arrive at "a final, definitive position regarding how it will apply the regulations at issue to the particular land in question." *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 191, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985). And under the "state procedures" requirement, the plaintiff must first seek compensation for the alleged taking through the procedures that the government has provided for doing so. *Williamson County*, 473 U.S. at 194.

¶14 In Washington, ripeness is often called "exhaustion of administrative remedies," but this doctrine incorporates the "final decision" requirement. *See, e.g., Presbytery of Seattle*, 114 Wn.2d at 338-39 (applying the "final decision" requirement in the context of the exhaustion/futility doctrine). Here, the City does not argue that Thun has failed to avail himself of any administrative procedures for requesting compensation, and the "state procedures" requirement is not implicated. We therefore confine our review to the "final decision" aspect of ripeness. *See Suitum*, 520 U.S. at 734 (declining to address the "state procedures" requirement because it was not addressed below and was not briefed on appeal).

B. *The "Final Decision" Requirement*

¶15 The federal "final decision" requirement "follows from the principle that only a regulation that 'goes too far' results in a taking." *Suitum*, 520 U.S. at 734 (quoting *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415, 43 S. Ct. 158, 67 L. Ed. 322 (1922)). "A court cannot determine whether a regulation has gone 'too far' unless it knows how far the regulation goes." *MacDonald, Sommer, & Frates v. Yolo County*, 477 U.S. 340, 348, 106 S. Ct. 2561, 91 L. Ed. 2d 285 (1986) (quoting *Pa. Coal Co.*, 260 U.S. at 415). The United States Supreme Court has repeatedly found the "final decision" requirement not satisfied where there is some uncertainty as to how the challenged regulations apply to the property at issue, and where the uncertainty could be solved by an application for a building permit or variance. *See Suitum*, 520 U.S. at 735-38.

¶16 However, the Supreme Court clarified in *Suitum* that "[t]he demand for finality is satisfied" when there is "no question . . . about how the 'regulations at issue [apply] to the particular land in question.'" 520 U.S. at 739 (second alteration in original) (quoting *Williamson County*, 473 U.S. at 191). In *Palazzolo v. Rhode Island*, the court further held that the "[r]ipeness doctrine does not require a landowner to submit applications for their own sake. Petitioner is required to explore development opportunities . . . *only if there is uncertainty as to the land's permitted use.*" 533 U.S. 606, 622, 121 S. Ct. 2448, 150 L. Ed. 2d 592 (2001) (emphasis added).

¶17 The Washington Supreme Court has not addressed *Suitum* or *Palazzolo*. Nor has it directly adopted the "final decision" requirement under article I, section 16. Rather, Washington courts follow the rule that "[e]xhaustion of administrative remedies is generally required before resort to the courts, although exhaustion is excused if a resort to administrative procedures would be futile." *Presbytery of Seattle*, 114 Wn.2d at 338. Under *Orion Corp. v. State*, 103

Wn.2d 441, 456-57, 693 P.2d 1369 (1985) (*Orion* I), the purpose of the exhaustion requirement is to

> (1) [e]nsure against premature interruption of the administrative process, (2) allow the agency to develop the necessary factual background on which to base a decision, (3) allow the exercise of agency expertise, (4) provide a more efficient process and allow the agency to correct its own mistake, and (5) insure that individuals are not encouraged to ignore administrative procedures by resort to the courts.

*Orion* I also held that exhaustion of remedies is excused as futile when " 'the available administrative remedies are inadequate, or if they are vain and useless.' " 103 Wn.2d at 458 (quoting 4 ROBERT M. ANDERSON, AMERICAN LAW OF ZONING § 26.10, at 306 (2d ed. 1977)).

¶18 In practice, however, Washington's exhaustion/futility doctrine incorporates the "final decision" requirement. For instance, *Orion* I held that administrative remedies were futile and no permit application was required where it was clear that the challenged regulations would not permit the plaintiff to make any reasonable use of its land, "rendering any permit application a vain and useless act." 103 Wn.2d at 460. *Estate of Friedman v. Pierce County*, 112 Wn.2d 68, 81, 768 P.2d 462 (1989), held that a takings claim was premature where it was still unknown what could be built under the challenged regulation. And *Presbytery of Seattle* held that a takings claim was unripe because the plaintiff had not sought any development permits and it was therefore not possible to know what effect the challenged regulations would have on the land. 114 Wn.2d at 339. These cases show that just as with the federal "final decision" requirement, exhaustion is deemed futile where the effect of the challenged regulations is known. And exhaustion is not deemed futile where uncertainty remains as to how the challenged regulations will impact the land.

¶19 But Washington courts typically hold that "as applied" regulatory takings claims are not ripe until " 'the initial government decision maker has arrived at a definite

position, conclusively determining whether the property owner was denied all reasonable beneficial use of its property.'" *See, e.g., Peste*, 133 Wn. App. at 473 (internal quotation marks omitted) (quoting *Guimont* II, 77 Wn. App. at 85). This rule has the effect of barring all partial takings claims.

¶20 It is well settled under both state and federal law that partial regulatory takings claims are actionable. *See Tahoe-Sierra Pres. Council*, 535 U.S. at 326 n.23; *Guimont* I, 121 Wn.2d at 603-04. A partial takings plaintiff need not show that he has been denied all reasonable beneficial use of his land—that is the showing required for a total taking. *See Guimont* I, 121 Wn.2d at 601. As such, this showing cannot be a precondition to ripeness for partial takings claims. We cannot both acknowledge that partial takings claims are actionable, yet hold that they are unripe unless they are total takings.

¶21 In this case, by applying the rule that a plaintiff must show a total taking to satisfy the "final decision" requirement, we would be holding that partial takings claims could never clear the hurdle of ripeness. This would exceed our authority. The United States Supreme Court has held that partial takings claims are actionable under the Fifth Amendment. We cannot hold that landowners in Washington have less protection than that afforded by the United States Constitution. *See PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 81, 100 S. Ct. 2035, 64 L. Ed. 2d 741 (1980) (noting that a state constitution may offer more, but not less, protection than the federal constitution).

¶22 As such, we reject the rule that partial takings plaintiffs must show denial of "all reasonable beneficial use" of their land to demonstrate ripeness. Rather, we adhere to established precedent that when there is some uncertainty as to the effect of the challenged regulations, a takings claim is unripe and the plaintiff must allow the government to reach a final decision regarding how said regulations apply. And when there is no uncertainty about

how the challenged regulations apply, further administrative proceedings are futile and the claim is ripe.

## C. *Thun's Claim*

¶23 Thun argues that because the allowed uses of his land are known and because the City has no discretion to grant a variance from its density regulations, any permit application would be futile and his claim is therefore ripe. We hold that the record before us does not show futility.

¶24 The United States Supreme Court addressed the showing required for futility in a total takings claim in *Suitum* and *Palazzolo*, both of which involved regulations that deprived the plaintiffs of all reasonable beneficial use of their land. *Suitum*, 520 U.S. at 739 (finding futility where regulations would prevent all development on land, making further procedures useless); *Palazzolo*, 533 U.S. at 621 (finding futility where government clearly interpreted regulations to prevent all development on land, making further procedures useless). In a partial takings claim, a landowner must make a less stringent showing that the permissible uses of the land are sufficiently known to permit the courts to determine the impact of the challenged regulations on the property. We hold that Thun has not made this showing.

¶25 Thun contends that because we know the uses permitted on his land under the Bonney Lake Municipal Code, the uses of his property are reasonably known and any permit application would be futile. We disagree. The record before us shows that neither party is certain how much of Thun's property is zoned RC-5, and how much is zoned C-2. And even if we arbitrarily presume that the C-2 portion is exactly seven acres, we have no facts regarding what uses could be made of seven acres of C-2 property in that location. Although we know what uses the municipal code permits, we have no facts about the character of the land or what kinds of uses might be possible on seven acres. We cannot say, under these circumstances, that the permitted uses of the property are reasonably known.

¶26 We further note that an expert's opinion that the challenged regulations destroy most of a parcel's value is insufficient to show futility. In *Presbytery of Seattle*, 114 Wn.2d at 325, the plaintiff's expert drew a hypothetical subdivision map of the land at issue and asserted that the challenged regulations precluded development on three or four out of five lots. But the Supreme Court held that the expert's opinion, based on a hypothetical subdivision plan, was insufficient to show futility. *Presbytery of Seattle*, 114 Wn.2d at 340. Here too, Hulsmann's opinion based on his hypothetical development plans does not render the permissible uses of the land reasonably known, especially where the actual sizes of the RC-5 and C-2 zoned areas are unknown.

¶27 Moreover, it is not enough to show that the uses of the RC-5 portion alone are reasonably known; takings jurisprudence does not permit us to analyze the RC-5 and C-2 portions as separate parcels. *Presbytery of Seattle*, 114 Wn.2d at 334 (quoting *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 497, 107 S. Ct. 1232, 94 L. Ed. 2d 472 (1987)). And the record contains no evidence as to the feasibility of permissible uses on that parcel other than Hulsmann's conclusory opinion that development would not be viable. An expert's unsupported conclusions do not create an issue of fact on summary judgment. *Guile v. Ballard Cmty. Hosp.*, 70 Wn. App. 18, 25, 851 P.2d 689 (1993). As such, we cannot hold that further administrative proceedings would be futile with regard to the C-2 portion.

¶28 Ripeness is a hurdle that requires the basic facts underlying a dispute to be resolved before the dispute reaches court. Courts cannot reach just and accurate results if neither the size of the parcels nor the permitted uses thereon are reasonably known before trial. We hold that Thun has not shown the futility of further administrative proceedings. We leave it to Thun and the City to determine what further proceedings will be most helpful to clarify the size of and permissible uses on the parcels at issue. But

until Thun has undergone adequate administrative proceedings to clarify these issues, his case is not ripe. We affirm the superior court's dismissal of Thun's case.

¶29 Affirmed.

ARMSTRONG and HUNT, JJ., concur.

Reconsideration denied December 20, 2011.

Review denied at 173 Wn.2d 1035 (2012).