# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| KARL J. THUN and VIRGINIA S. THUN, husband and wife; DANIEL POVOLKA, SALLY BAYLEY, THERESA BOOTH, and NANCY LEGAS, heirs of Thomas J. Povolka; LOUISE LESLIE and TERESA M. AFORTH, trustees of the William and Louise Leslie Revocable Trust; and VIRGINIA LESLIE and KAREN LESLIE, trustees of the Virginia Leslie Revocable Trust, | No. 49690-9-II |
| Appellants, | |
| v. | |
| CITY OF BONNEY LAKE, a municipal corporation, | PUBLISHED OPINION |
| Respondent. | |

WORSWICK, J. — Karl J. and Virginia S. Thun, Thomas J. Povolka, William and Louise Leslie Revocable Trust, and Virginia Leslie Revocable Trust (collectively Thun) filed a lawsuit against the City of Bonney Lake (City), alleging that the City's adoption of an ordinance rezoning the majority of Thun's property constituted an unconstitutional regulatory taking. The trial court granted the City's motion for summary judgment dismissal of the case.

Thun appeals, arguing that there is a genuine issue of material fact regarding the purpose of the City's ordinance and that the trial court misinterpreted the law in holding that the ordinance did not confer a public benefit. We affirm summary judgment dismissal of Thun's regulatory takings claim.

FACTS

I. BACKGROUND

Thun owns approximately 36 acres of property near the city limits of Bonney Lake. A majority of Thun's property is located on a steep hillside that slopes into the Puyallup River Valley. The slopes vary from 20 percent to 40 percent or greater and pose a high landslide risk. Thun's property was originally zoned C-2 (commercial), which permitted a maximum of 20 residential units per acre.

In 2004, the Central Puget Sound Growth Management Hearings Board ordered the City to revise its zoning designations to comply with Washington's Growth Management Act (GMA). The GMA requires each city to adopt development regulations that provide open space areas between urban growth areas and that protect critical areas, including areas susceptible to erosion or sliding. RCW 36.70A.160; former RCW 36.70A.060(2) (1998); *see* former RCW 36.70A.030(5), (9) (1997). The City identified a number of areas with zoning designations that it deemed inconsistent with the GMA, including Thun's property.

In March 2005, Thun entered into a purchase and sale agreement with a developer to construct a 575-unit condominium complex on his property. On September 13, the developer submitted an application to the City for a site development permit for the condominium complex. That same day, the City adopted Ordinance 1160 (Ordinance), which rezoned all but roughly 5.5 acres of Thun's property from C-2 to RC-5 (residential/conservation). Thun's proposed development was not allowed under the rezone because RC-5 zoning authorizes only one residential unit per five acres. The City subsequently denied the developer's site development

2

permit application. Thun estimates that the City's rezone reduced the value of his property from $6.00 per square foot, or $2.50 in certain areas, to $0.35 per square foot.

In adopting the Ordinance, the City noted that its purposes were to (1) manage areas that are steep and prone to geologic instability, (2) protect tree cover on areas that cannot be densely developed due to steepness, (3) "protect the magnificent entry to [the City]," and (4) comply with the GMA, which requires the City to identify open space corridors between urban growth areas. Clerk's Papers (CP) at 248. The City's mayor at the time of the adoption of the Ordinance stated in a declaration that he disagreed with adoption of the Ordinance in part because he believed that the City's primary purpose in adopting the Ordinance was to protect the magnificent entry to the City, and not to address the danger of landslides.

## II. PROCEDURE

### A. *Thun's First Appeal*

In 2008, Thun filed a lawsuit against the City, arguing that the Ordinance's rezone constituted an unconstitutional regulatory taking. The trial court granted summary judgment dismissal of Thun's regulatory takings claim. *Thun v. City of Bonney Lake*, 164 Wn. App. 755, 758, 265 P.3d 207 (2011). We affirmed the trial court's dismissal of Thun's claim, reasoning that it was not ripe for review. 164 Wn. App. at 768.

We determined that because neither Thun nor the City was certain of how much of Thun's property was zoned C-2 or RC-5, and because we were not presented with evidence regarding permissible uses of the C-2 property or the feasibility of permissible uses, Thun's claim was not ripe. 164 Wn. App. at 766-67. As a result, we could not "reach just and accurate

results if neither the size of the parcels nor the permitted uses thereon [was] reasonably known before trial." 164 Wn. App. at 767.

B.      *Current Litigation*

In 2013, Thun attended a preapplication meeting with the City. At the meeting, Thun submitted a "conceptual plan" for a 96-unit condominium complex with retail and office space on the C-2 portion of his property, as well as a plan for one residential unit for each five acres on the RC-5 portion of his property. CP at 4. Thun and the City also verified the size of the C-2 portion of his property and determined that the C-2 zoning permitted a 131-unit condominium complex with retail and office space. The preapplication meeting was "not considered a final determination of the subject project." CP at 93. Thun did not submit a site development plan or a permit application to the City after the preapplication meeting.

In 2016, Thun again filed suit against the City, seeking damages for the City's alleged unconstitutional regulatory taking of his property under article I, section 16 of the Washington Constitution. The City filed a motion for summary judgment dismissal of Thun's claim, arguing that Thun's regulatory takings claim remained unripe for review and, alternatively, that Thun failed to meet the threshold requirement of a regulatory takings claim.

The trial court granted the City's motion for summary judgment dismissal of Thun's claim. The court determined that Thun's regulatory takings claim was ripe for review because the preapplication meeting provided a reasonable idea of the permissible uses of Thun's C-2

4

property and because the court could waive prudential ripeness.[1]  But the trial court then ruled

that Thun had failed to show that the rezone constituted a regulatory taking and dismissed

Thun's lawsuit.  In its order, the trial court stated it was granting the City's motion because "the

rezone seeks to prevent a harm by safeguarding the public interest in health, safety, and the

environment, and does not impose on [Thun] a requirement to provide an affirmative public

benefit."  CP at 444.  Thun appeals.

## ANALYSIS

### REGULATORY TAKINGS

Thun argues that the trial court erred in granting summary judgment dismissal of his

regulatory takings claim because there is a genuine issue of material fact regarding the purpose

of the Ordinance and because the trial court erred in holding that conferring a public benefit

requires that landowners undertake an affirmative act.  The City argues that Thun's regulatory

takings claim is not ripe for review and that Thun failed to meet the threshold requirement of a

regulatory takings claim.  We exercise our discretion to decide this case on the merits, and we

affirm summary judgment dismissal of Thun's regulatory takings claim because there is no

genuine issue of material fact and because Thun fails to meet the threshold requirement of a

regulatory takings claim.

---

[1] As we discuss in more detail below, prudential ripeness is "a tool that courts may use to enhance the accuracy of their decisions and to avoid becoming embroiled in adjudications that may later turn out to be unnecessary or may require premature examination." *Simmonds v. Immigration & Naturalization Serv.*, 326 F.3d 351, 357 (2d Cir. 2003).

A.    *Legal Principles*

We review a trial court's order granting summary judgment de novo, and we stand in the same position as the trial court. *Retired Pub. Emps. Council of Wash. v. Charles*, 148 Wn.2d 602, 612, 62 P.3d 470 (2003); *TT Props., LLC v. City of Tacoma*, 192 Wn. App. 238, 245, 366 P.3d 465, *review denied*, 185 Wn.2d 1036 (2016). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). When determining whether a genuine issue of material fact exists, we consider all facts and reasonable inferences in the light most favorable to the nonmoving party. *Charles*, 148 Wn.2d at 612. "A material fact is one on which the litigation's outcome depends in whole or in part." *TT Props.*, 192 Wn. App. at 245.

B.    *Takings Analysis*

Land use regulations may be challenged as unconstitutional regulatory takings under article I, section 16 of the Washington Constitution. *Presbytery of Seattle v. King County*, 114 Wn.2d 320, 333, 787 P.2d 907 (1990). Article I, section 16 provides that "[n]o private property shall be taken or damaged for public or private use without just compensation having been first made."

There are two types of unconstitutional regulatory takings challenges to land use regulations: facial and "as applied" challenges. *Peste v. Mason County*, 133 Wn. App. 456, 471, 136 P.3d 140 (2006). Facial takings challenges allege that the application of the challenged regulation to any property constitutes a taking because it destroys a fundamental attribute of

property ownership. 133 Wn. App. at 471. As applied takings challenges allege that the

challenged regulation constitutes an unconstitutional regulatory taking as applied to a specific

parcel of property. 133 Wn. App. at 471. Here, Thun raises an as applied takings challenge.

1. Ripeness

As an initial matter, the City argues that Thun's regulatory takings claim is not ripe for

review because Thun has not received a final governmental decision regarding the permitted uses

of his property. Thun argues that a final governmental decision is a requirement of prudential

ripeness, which we can waive. We agree with Thun, and we waive the final governmental

decision requirement of prudential ripeness.

The ripeness doctrine provides that claims are ripe for judicial review when "the issues

raised are primarily legal, and do not require further factual development." *Jafar v. Webb*, 177

Wn.2d 520, 525, 303 P.3d 1042 (2013). Ripeness includes a prudential component. *Wolfson v.

Brammer*, 616 F.3d 1045, 1058 (2010).[2] We use the doctrine of prudential ripeness to enhance

the accuracy of our decisions and to avoid becoming prematurely embroiled in adjudications that

may later turn out to be unnecessary. *Simmonds v. Immigration & Naturalization Serv.*, 326 F.3d

351, 357 (2d Cir. 2003). To determine whether a case is prudentially ripe, we determine whether

the case will be better decided at a later date and whether the parties will be prejudiced by the

delay. 326 F.3d at 357; *see State v. Bahl*, 164 Wn.2d 739, 747, 193 P.3d 678 (2008). We weigh

---

[2] Washington courts often look to federal case law to inform its regulatory takings analyses. *See
Presbytery*, 114 Wn.2d at 337-39; *Guimont v. Clarke*, 121 Wn.2d 586, 605-07, 854 P.2d 1
(1993); *Margola Assocs. v. City of Seattle*, 121 Wn.2d 625, 643-48, 854 P.2d 23 (1993).

the fitness of the issues for judicial consideration and the hardship to the parties of withholding judicial consideration. *Wolfson*, 616 F.3d at 1060.

An as applied regulatory takings claim is not ripe for review unless there is a final governmental decision regarding the application of the regulations to the property at issue and the permitted uses of that property. *Ventures Nw. Ltd. P'ship v. State*, 81 Wn. App. 353, 368, 914 P.2d 1180 (1996). A final determination allows us to "compare the present value of the regulated property and the value of the property before imposition of the regulation to determine whether the regulation has diminished the economic uses of the land." *Peste*, 133 Wn. App. at 473.

A governmental decision cannot be final until the landowner has submitted a formal development plan. *See Estate of Friedman v. Pierce County*, 112 Wn.2d 68, 80, 768 P.2d 462 (1989); *see also Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1232 (9th Cir. 1994). The requirement that a landowner receive a final governmental decision is a requirement of prudential ripeness. *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 734, 117 S. Ct. 1659, 137 L. Ed. 2d 980 (1997). When a takings claim raises only prudential ripeness concerns, we have the discretion to waive the final governmental decision requirement. *Adam Bros. Farming, Inc. v. County of Santa Barbara*, 604 F.3d 1142, 1148 (9th Cir. 2010).

On September 13, 2005, the City adopted the Ordinance, which rezoned Thun's property. Thun estimates that the City's adoption of the Ordinance reduced the value of his property. In 2013, Thun developed a conceptual plan for a condominium complex and multiple residential units on his property. Thun did not submit a site development plan or a permit application.

Accordingly, there has been no final governmental decision regarding the permitted uses of Thun's property.

Although Thun has not filed a site development plan or a permit application, he estimates that the economic use of his land has diminished because of the City's adoption of the Ordinance. As a result, we are able to "compare the present value of the regulated property and the value of the property before imposition of the regulation." *Peste*, 133 Wn. App. at 473. Moreover, because we ultimately affirm the trial court's order granting summary judgment dismissal of Thun's regulatory takings claim, waiving the final governmental decision requirement would avoid further unnecessary proceedings. Accordingly, we exercise our discretion to waive the final governmental decision requirement of prudential ripeness.

2. Threshold Inquiry: Prevention of Public Harm & Affirmative Public Benefit

In analyzing an as applied takings claim, we first determine the threshold inquiry of whether the challenged regulation goes beyond preventing a real public harm that is directly caused by the prohibited use of the property to producing an affirmative public benefit. *Guimont v. Clarke*, 121 Wn.2d 586, 603, 854 P.2d 1 (1993). The conferral of an affirmative public benefit and the prevention of public harm are often present in varying degrees. *Presbytery*, 114 Wn.2d at 329 n.13. But "the initial decision as to whether the predominant goal of the regulation is the prevention of a real harm to the public or the conferral of a benefit upon other publicly held property must be made according to the facts of each individual case." 114 Wn.2d at 329 n.13.

Landowners do not have the right to use their property in a manner that injures the community. *Presbytery*, 114 Wn.2d at 329 n.13. "However, one landowner should not be

forced to bear the economic burden to confer a benefit upon the public, the cost of which rightfully should be spread over the entire community." 114 Wn.2d at 329 n.13. If the challenged regulation merely safeguards the public interest in health, safety, the environment, or fiscal integrity, there is no taking and our analysis ends. *Guimont*, 121 Wn.2d at 603; *Margola Assocs. v. City of Seattle*, 121 Wn.2d 625, 645, 854 P.2d 23 (1993).

In 2005, the City adopted the Ordinance, which rezoned the majority of Thun's property from C-2 to RC-5. The property's original C-2 zoning designation permitted a maximum of 20 residential units per acre; however, the RC-5 zoning designation authorized only 1 residential unit per 5 acres. In adopting the Ordinance, the City noted that its purposes were to manage steep areas that are prone to geologic instability, protect tree cover, and protect the entrance to the City. The Ordinance also complied with the GMA's mandate to adopt development regulations that provide open space areas between urban growth areas and that protect critical areas that are susceptible to erosion or sliding. RCW 36.70A.160; former RCW 36.70A.060(2); *see* former RCW 36.70A.030(5), (9).

Thun argues that he must show only that the Ordinance goes beyond preventing a public harm, which the Ordinance does by providing a "view easement" to preserve the City's entry. Br. of Appellant at 24. However, Thun abbreviates the threshold inquiry in determining whether a regulatory taking occurred. Instead, we must determine whether the Ordinance goes beyond preventing a real public harm that is directly caused by the prohibited use of the property to producing an affirmative public benefit. *Guimont*, 121 Wn.2d at 603.

10

Thun fails to meet the threshold requirement of showing that the Ordinance went beyond preventing a real public harm to producing an affirmative public benefit. The Ordinance was adopted in an effort to protect tree cover and manage steep areas that are prone to landslides and erosion, as well as to protect the entry to the City. The evidence in this case make clear that the predominant goal of the Ordinance was to prevent a real public harm that is directly caused by the prohibited uses of Thun's property. By restricting high density developments on the steep slopes of Thun's property, the City is able to protect the public from the safety and environmental concern that landslides and erosion present.[3]

We note that the public benefit here, preserving the City's magnificent entry, is distinct from other regulatory takings cases where the challenged regulation went beyond preventing a public harm. For example, in *Sintra v. City of Seattle*, 119 Wn.2d 1, 829 P.2d 765 (1992), and *Robinson v. City of Seattle*, 119 Wn.2d 34, 830 P.2d 318 (1992), property owners sought to develop their properties in ways that eliminated low income housing. *Sintra*, 119 Wn.2d at 6-7; *see Robinson*, 119 Wn.2d at 41. The city imposed a substantial demolition fee based, in part, on the fact that the owners were eliminating low income housing. *Sintra*, 119 Wn.2d at 7; *see Robinson*, 119 Wn.2d at 42. The Supreme Court held that the ordinance went beyond preventing public harm. *Sintra*, 119 Wn.2d at 15; *Robinson*, 119 Wn.2d at 52-53. In *Sintra*, the court reasoned that "the [ordinance] required that landowners who wished to alter the use of their property either replace the low-income housing or pay extremely high sums of money into a

---

[3] Thun suggests that the City's stated purposes regarding landslides and geologic instability are a sham. We do not find evidence in the record for this assertion.

housing replacement fund. The harm sought to be prevented—people standing on the street corner with nowhere to go—was exceeded." 119 Wn.2d at 15. The court also determined that the burden the ordinance imposed was unfairly allocated to individual property owners instead of equally distributed among the public. 119 Wn.2d at 15-16.

Thun cannot establish that the Ordinance seeks *less* to prevent these real public harms than to require Thun to provide an affirmative public benefit by preserving the entry to the City. That the public may benefit from the preservation of the City's magnificent entry does not reduce or remove the effect of the Ordinance of safeguarding the public from harm.[4] Thun is still permitted to develop his property; the Ordinance only prohibits Thun from developing his property in a manner that is injurious to the community.

Thun also argues that the mayor's statement regarding his belief that the City primarily adopted the Ordinance to protect the magnificent entry to the City creates an issue of material fact on the threshold inquiry. We disagree.

In adopting the Ordinance, the City noted that its purposes were to manage steep areas that are prone to geologic instability, protect tree cover, protect the entrance to the City, and comply with the GMA. In opposition to the City's motion for summary judgment, Thun submitted a declaration of the City's then-mayor, who stated:

---

[4] We note that, for purposes of a regulatory taking, "'the use under consideration must be either a use by the public, or by some agency which is quasi public, and not simply a use which may incidentally or indirectly promote the public interest.'" *Manufactured Hous. Cmtys. of Wash. v. State*, 142 Wn.2d 347, 372-73, 13 P.3d 183 (2000) (quoting *Healy Lumber Co. v. Morris*, 33 Wash. 490, 509, 74 P. 681 (1903)).

It appeared to me that the primary purpose of the [City] in adopting [the Ordinance] was not to address the danger of landslides. . . . I believe that the primary purpose of the ordinance was correctly express[ed] by the staff report recommending adopting of [the Ordinance] as follows:

"The current entry to Bonney Lake is magnificent because one arrives at the top of the plateau and finds the small City framed by tall trees. This imparts a pleasant sense of arrival. This gateway effect is lost if development is continuous from Sumner to Bonney Lake."

CP at 406-07.

Even viewing the mayor's statement in a light most favorable to Thun, Thun fails to show that the statement creates a genuine issue of material fact. The mayor's opinion or personal belief about the primary purpose of the Ordinance does not establish in whole, or in part, that the Ordinance went beyond preventing a real public harm to producing an affirmative public benefit. *See Watson v. City of Seattle*, 189 Wn.2d 149, 162, 401 P.3d 1 (2017) ("Statements by 'individual legislator[s] do[ ] not show legislative intent.'") (alterations in original) (quoting *State ex rel. Citizens Against Tolls (CAT) v. Murphy*, 151 Wn.2d 226, 238, 88 P.3d 375 (2004). Moreover, the mayor's opinion does not invalidate the City's stated purposes in adopting the Ordinance. Accordingly, the mayor's statement does not create a genuine issue of material fact.

Accordingly, Thun fails to meet the threshold requirement of showing that the Ordinance goes beyond preventing a real public harm to producing an affirmative public benefit. Thus, Thun fails to establish a regulatory takings claim, and the trial court did not err in granting summary judgment dismissal of his claim.

3.  Trial Court's Rationale

Thun's remaining arguments on appeal are directed at the trial court's rationale in granting the City's motion for summary judgment dismissal.[5]  Because our review is de novo, and we are in the same position as the trial court, we do not address the trial court's rationale. Instead, we review the motion de novo.  We affirm summary judgment dismissal of Thun's regulatory takings claim because Thun fails to meet the threshold requirement of a regulatory takings claim.

We affirm summary judgment dismissal of Thun's regulatory takings claim.

_____
Worswick, P.J.

We concur:

_____
Bjorgen, J.

_____
Melnick, J.

---

[5] Specifically, Thun argues that the trial court erroneously granted summary judgment dismissal of his claim because of the court's mistaken belief that Thun had to contribute to a fund, develop the property, or undertake some affirmative act.  The City did not make this argument in its motion for summary judgment; the trial court appears to have mistakenly incorporated this requirement into the regulatory takings analysis sua sponte.  Despite this, the trial court's rationale is not germane to our review, and we may affirm the trial court's summary judgment decision on any ground supported by the record.  *Pac. Marine Ins. Co. v. State ex rel. Dep't of Revenue*, 181 Wn. App. 730, 737, 329 P.3d 101 (2014).