136 P.3d 140 (2006)
133 Wash.App. 456
Lillian M. PESTE, Individually, Lillian M. Peste, Sharon Johnston, and Bank of America, Trustees of the Fred G. Peste Testamentary Trust, Appellants,
v.
MASON COUNTY, Respondent.
No. 33437-2-II.
Court of Appeals of Washington, Division 2.
June 14, 2006.
*143 Elmer Robert Fristoe, Don W. Taylor, Attorneys at Law, Olympia, WA, for Appellants.
T.J. Martin, Mason County Prosecutor's Office, Shelton, WA, for Respondent.
VAN DEREN, J.
¶ 1 Lillian M. Peste, Sharon Johnston, and Bank of America, as trustee of the Fred G. Peste Trust, and Lillian M. Peste, individually (collectively Peste), appeal Mason County's denial of a rezone request. Peste asserts that (1) Mason County's comprehensive plan and development regulations are void because Mason County adopted them without complying with statutory notice and public participation procedures; (2) Mason County's comprehensive plan and development regulations violate Peste's substantive due process rights; (3) Mason County's comprehensive plan and development regulations constitute a regulatory taking of estate property; and (4) substantial evidence does not support the Mason County Board of Commissioners' (Board) findings. We affirm.

BACKGROUND

A. PROCEDURAL FACTS
¶ 2 In 1997, Peste filed a plat application for land located in Mason County. The application is not part of the record on appeal. It is not clear from the record what happened to the plat application. Peste states that the County never acted on it. The record does not contain a description of the plat application boundaries, but at oral argument before us, it was described as some portion of "Section 21" owned by Peste.[1]
*144 ¶ 3 In 2001, Peste requested that the Mason County Planning Department (Planning Department) and the Board rezone two parcels of property to allow for an increased residential density.[2] On March 2 and 9, 2004, the Board held public hearings to determine whether to grant Peste's rezone request. After testimony by interested parties, the Board denied the request. Peste timely appealed the Board's decision to the Mason County Superior Court under the Washington Land Use Petition Act (LUPA).[3] The trial court affirmed the Board's decision.

B. ADOPTION OF MASON COUNTY'S COMPREHENSIVE AND DEVELOPMENT REGULATIONS
¶ 4 The legislature enacted the Growth Management Act (GMA), RCW 36.70A.010.902 to minimize the threats unplanned growth poses to the environment, economic development, and public welfare. RCW 36.70A.010. The GMA's goals include reducing sprawl, encouraging development in areas already characterized by urban development, preserving open spaces and the environment, and encouraging availability of affordable housing. See RCW 36.70A.020.
¶ 5 The GMA requires that communities adopt comprehensive land use plans (CPs) and development regulations (DRs) in accordance with the GMA to implement the statute's broad goals. RCW 36.70A.040. Although the GMA affords local governments wide latitude and discretion in creating their CPs and DRs according to local needs, growth patterns, and resources, they must still comply with certain requirements set forth in the GMA. Diehl v. Mason County, 94 Wash.App. 645, 650, 972 P.2d 543 (1999).
¶ 6 After a long process of public hearings and meetings between municipalities and local groups, Mason County adopted its CP and DRs in April 1996. Diehl, 94 Wash.App. at 650, 972 P.2d 543. Following a successful challenge to the CP's adequacy before the Western Washington Growth Management Hearings Board (Growth Board) in December 1996, Mason County undertook to amend its CP and accompanying DRs to bring them into compliance with the GMA. The Growth Board issued a series of compliance orders over the next seven years determining which amendments brought Mason County's CP and DRs closer to compliance with the GMA.
¶ 7 In compliance orders dated December 15, 2000, and March 1, 2001, the Growth Board concluded that the Mason County CP and DRs adequately established development densities for the county's rural areas. Finally, on November 12, 2003, the Growth Board determined that Mason County's CP and DRs were in substantial compliance with the GMA.

C. PESTE'S REZONE REQUEST
¶ 8 The Section 21 property consists of two adjacent parcels totaling 556.6 acres. The Section 21 property was designated Rural Residential 5 (RR 5) in the county's original April 1996 CP. But following numerous amendments that brought Mason County's CPs and DRs into compliance with the GMA, Section 21 is now located in a Mason County rural area with a designated residential density of one dwelling unit per 20 acres.[4] Rural Residential 20 (RR 20) properties surround the Section 21 property on the east, west, and south.[5] RR 5 properties neighbor it to the north and southeast.[6]
¶ 9 On May 9, 2001, Peste requested that the Planning Department and the Board rezone the Section 21 property from a RR 20 *145 designation to a RR 5 designation. On April 12, 2002, the Mason County Department of Community Development (MCDCD) informed Peste that it had not yet processed Peste's request because the County was first addressing its GMA noncompliance issues.
¶ 10 The Mason County Planning Advisory Commission (Commission) held public hearings to consider Peste's rezone requests on October 20, 2003, and December 15, 2003. Against MCDCD's recommendation that Peste's request be denied, the Commission recommended that the Board approve a compromise to rezone the Section 21 property from an RR 20 designation to a Rural Residential 10[7] (RR 10) designation.
¶ 11 The Board held public hearings to determine whether to grant Peste's rezone request on March 2 and 9, 2004. The Board concurred with the MCDCD's recommendation, rejected the Commission's proposed compromise, and denied Peste's rezone request. The Board entered findings of fact regarding its decision, explaining that Peste's rezone request did not conform with Mason County's CP. The Board specifically concluded that Peste's proposal did not meet any of Mason County's "rezone criteria" outlined in DR 1.05.080.
¶ 12 Peste appealed the Board's decision to the Mason County Superior Court under LUPA, chapter 36.70C RCW. The trial court affirmed the Board's decision in an order and accompanying memorandum opinion on June 9, 2005.
¶ 13 Peste appeals, arguing that (1) Mason County's CP and DRs are void because Mason County adopted them without complying with statutory notice and public participation procedures; (2) Mason County's CP and DRs violate Peste's substantive due process rights; (3) Mason County's CP and DRs constitute a regulatory taking of the Section 21 property; and (4) substantial evidence does not support the Board's findings.

ANALYSIS

A. STANDARDS OF REVIEW
¶ 14 LUPA governs judicial review of land use decisions. RCW 36.70C.030. When reviewing a land use decision, we stand in the same position as the superior court and limit our review to the administrative record before the Board. Pavlina v. City of Vancouver, 122 Wash.App. 520, 525, 94 P.3d 366 (2004); Citizens for Responsible & Organized Planning v. Chelan County, 105 Wash.App. 753, 758, 21 P.3d 304 (2001). We may grant relief from a land use decision only if the party seeking relief has carried the burden of establishing that one of the following standards is met:
(a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;
(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;
(d) The land use decision is a clearly erroneous application of the law to the facts;
(e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or
(f) The land use decision violates the constitutional rights of the party seeking relief.
RCW 36.70C.130(1)(a-f).
¶ 15 Standards (a), (b), (e), and (f), present questions of law we review de novo. Cingular Wireless, LLC v. Thurston County, 131 Wash.App. 756, 768, 129 P.3d 300 (2006) (citing HJS Dev., Inc. v. Pierce County, 148 Wash.2d 451, 468, 61 P.3d 1141 (2003)). Standard (c) concerns a factual determination that we review for substantial evidence. Cingular Wireless, 131 Wash.App. at 768, 129 P.3d 300.
¶ 16 The clearly erroneous test under (d) involves applying the law to facts. Cingular Wireless, 131 Wash.App. at 768, 129 *146 P.3d 300 (citing Citizens to Pres. Pioneer Park, LLC v. The City of Mercer Island, 106 Wash.App. 461, 24 P.3d 1079 (2001)).
¶ 17 Before filing a LUPA petition, the petitioner must first exhaust administrative remedies to the extent required by law. Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wash.2d 169, 177, 4 P.3d 123 (2000) (citing RCW 36.70C.060).

B. NOTICE AND PUBLIC PARTICIPATION
¶ 18 Peste argues that (1) in adopting its CP and DRs, Mason County did not comply with the notice and public participation procedures of RCW 35.63.100, 36.70A.035, and 36.70A.390; and (2) consequently, because Mason County had to strictly comply with those statutory procedures, the County's CP and DRs and all amendments are void.
¶ 19 Mason County responds that its CP and DRs are presumed valid; that Peste failed to timely appeal the adoption of the CP and DRs; that strict compliance with the GMA's notice procedures is not required; and that Peste's challenge is an unlawful collateral attack on its CP.
¶ 20 Peste's argument fails for several reasons. First, we are not the appropriate tribunal to review Peste's notice challenge. RCW 36.70C.030(1)(a)(ii) states that LUPA does not apply to judicial review of land use decisions that are subject to review by a quasi-judicial body created by state law, such as the Growth Board. RCW 36.70A.280(1)(a) requires that the Growth Board hear and determine petitions that allege a CP adopted under the GMA is not in compliance with its requirements. Chapter 36.70A RCW. Peste alleges that Mason County did not comply with the GMA's notice and public participation requirements. That challenge must first have been presented to the Growth Board, not directly to court.
¶ 21 Peste's citation to RCW 35.63.100 is also unpersuasive. That provision states that a county's planning commission must hold at least one public hearing and give notice of that hearing by publication in a paper of general circulation before recommending a CP to the Board. RCW 35.63.100. In Diehl, we noted that Mason County, "[a]fter a long process of public hearings and meetings between municipalities and local groups," adopted its original CP and the implementing DRs in 1996. 94 Wash.App. at 650, 972 P.2d 543. Although the record here does not indicate that Mason County published notice of the public hearings before its adoption of the CP and DRs, and although Mason County does not deny Peste's assertion, our comments in Diehl suggest that Mason County indeed provided effective notice of public hearings, and establishes that it held several public hearings.
¶ 22 Moreover, the notice and public participation procedures in RCW 35.63.100, and those in the GMA do not require "strict compliance." See RCW 35.63.100; RCW 36.70A.035. Also, the GMA's notice and public participation procedures were not applicable to the adoption of Mason County's original CP in 1996. See RCW 36.70A.035(3).[8]
¶ 23 Most importantly, however, Peste did not appeal the adoption of Mason County's CP, DRs, or any subsequent amendments made between 1996 and 2003. The GMA requires that a party appeal any adopted CP, DR, or permanent amendment made under it, within 60 days of publication of the adoption of the CP, the DRs, or any amendments. RCW 36.70A.290(2). Significantly, Peste has not appealed the adoption of Mason County's CP and DRs or any *147 amendment to the Growth Board.[9] Thus, Peste has waived its right to argue that Mason County did not comply with the GMA's notice and public participation procedures.

C. TAKINGS AND SUBSTANTIVE DUE PROCESS
¶ 24 Peste also argues that Mason County's CP and DRs (1) constitute a regulatory taking of the Section 21 property; and (2) violate its substantive due process rights.[10]

1. Reviewability
¶ 25 Mason County responds that Peste's failure to raise these issues before the Board when it heard Peste's rezone request precludes Peste from raising them on appeal. We disagree. RCW 36.70C.130(1)(f) expressly allows Peste to bring its constitutional takings and substantive due process claims in its LUPA petition. Moreover, RCW 34.05.570(3)(a) states that the reviewing court shall grant relief from an adjudicative agency ruling if it determines that the statute or rule on which the decision was based is in violation of constitutional provisions either on its face or as applied. Additionally, RAP 2.5(a) allows parties to raise manifest errors affecting constitutional rights for the first time on appeal. And finally, although issues not raised before an agency generally may not be raised on appeal, we have inherent authority to consider all issues necessary to reach a proper decision. Hertzke v. Dep't of Ret. Sys., 104 Wash.App. 920, 928, 18 P.3d 588 (2001). Thus, we reject Mason County's contention that Peste may not now raise its constitutional arguments because it did not raise them before the Board.
¶ 26 Mason County also argues that Peste's takings claim is a claim for damages, that Peste's LUPA petition is not a claim for damages, and that regulatory takings do not invalidate land use decisions. Mason County is correct that by definition, "just compensation" is the typical remedy under takings, not invalidation of land use decisions. U.S. CONST. amend. V, cl. 3; WASH. CONST. art. 1, § 16. But LUPA does not prohibit hearing independent claims for damages simultaneously with claims brought in a LUPA petition. See RCW 36.70C.030(1)(c). Thus, we address the merits of Peste's takings claim despite Peste's failure to request damages or to bring its takings claim in a separate action. In short, Peste's takings claim is reviewable here whether Peste's takings claim is considered a claim for damages or a constitutional claim properly brought under LUPA.

2. Constitutional Challenge to Land Use Regulations
¶ 27 Land use regulations may be challenged as unconstitutional takings, violations of substantive due process, or both. Guimont v. Clarke, 121 Wash.2d 586, 594, 854 P.2d 1 (1993) (Guimont I). When a party challenges a land use regulation on both grounds, we analyze the takings claim first. Guimont I, 121 Wash.2d at 594, 854 P.2d 1. Even if a land use regulation does not amount to a taking, it must still comply with the substantive due process requirements of the fifth and fourteenth amendments *148 to the United States Constitution. Guimont v. City of Seattle, 77 Wash.App. 74, 86, 896 P.2d 70 (1995) (Guimont II) (citing Guimont I, 121 Wash.2d at 607, 854 P.2d 1).

a. Takings
¶ 28 Washington takings analysis requires us to inquire at the threshold whether the challenged CP and DRs destroy any fundamental attribute of property ownership; specifically, the rights to possess, exclude others, dispose of, and make some economically viable use of the property. Guimont I, 121 Wash.2d at 600-02, 605, 854 P.2d 1. There is no evidence in the record before us, and Peste does not allege, that Mason County's CP and DRs implicate any of the first three fundamental attributes of property ownership. More importantly, Washington case law on regulatory takings focuses on only the fourth fundamental attribute of property ownershipthe right to make some economically viable use of propertypresumably because the first three attributes seem far more likely to be implicated when the state physically takes property. See generally, Guimont I; Guimont II; Robinson v. City of Seattle, 119 Wash.2d 34, 50, 830 P.2d 318 (1992), Presbytery of Seattle v. King County, 114 Wash.2d 320, 335, 787 P.2d 907 (1990). Thus, the only fundamental attribute of property ownership affected here is Peste's right to make some economically viable use of the Section 21 property.
¶ 29 There are two types of takings challenges to land use regulations: facial challenges and "as applied" challenges. See Robinson, 119 Wash.2d at 50, 830 P.2d 318. Facial challenges allege that the application of a given land use regulation to any property constitutes a taking. Robinson, 119 Wash.2d at 50, 830 P.2d 318. Facial challenges to land use regulations are analyzed under the threshold inquiry of whether they destroy a fundamental attribute of property ownership. Guimont I, 121 Wash.2d at 605, 854 P.2d 1. "[A]s applied" challenges allege that a land use regulation constitutes a taking as applied to a specific parcel of property. Robinson, 119 Wash.2d at 50, 830 P.2d 318.

i. Facial Challenge
¶ 30 Under a facial challenge to land use regulations, the landowner must demonstrate that the mere enactment of the regulation, and its application to any property, constitutes a taking. Guimont I, 121 Wash.2d at 605, 854 P.2d 1; Robinson, 119 Wash.2d at 50, 830 P.2d 318. To prove that a statute on its face effects a taking by regulating the permissible uses of property, the landowner must show that the enactment of the regulation denies the owner all economically viable use of the property. Guimont I, 121 Wash.2d at 605, 854 P.2d 1; Lund v. Dep't of Ecology, 93 Wash.App. 329, 339-340, 969 P.2d 1072 (1998). "A facial challenge in which the court determines a regulation denies all economically viable use of property `should prove to be a relatively rare occurrence.'" Guimont I, 121 Wash.2d at 606, 854 P.2d 1 (quoting Presbytery, 114 Wash.2d at 335, 787 P.2d 907).
¶ 31 Here, Peste presented no evidence that Mason County's adoption of its CP and DRs deprives it of all economically viable use of the Section 21 property. Peste refers to the testimony of a member of Mason County's Planning Advisory Commission (PAC) during a PAC public hearing held on December 15, 2003, to consider Peste's three rezone requests. The testimony suggested that one parcel Peste owns was formerly suitable for Christmas tree farming but is no longer suitable for such use. But this testimony does not indicate that Peste's property is unavailable for other economically viable uses and the testimony did not refer to the Section 21 property but to a different parcel Peste owns that is involved in a separate rezone request. At most, Peste has demonstrated that Mason County's CP and DRs and the Board's land use decision prevent it from developing one of its parcels in the exact manner it wishes. Thus, Peste's facial challenge to the validity of Mason County's CP and DRs fails.

ii. "As Applied" Challenge
¶ 32 If the enactment of a land use regulation does not destroy any fundamental attributes of property ownership, we then analyze whether the challenged regulation goes beyond preventing a public harm to *149 producing a public benefit. Guimont I, 121 Wash.2d at 601, 854 P.2d 1. If the regulation goes beyond preventing a public harm to producing a benefit, or if the regulation infringes on (as opposed to destroying) a fundamental attribute of property ownership, we must then decide whether the regulation substantially advances a legitimate state interest. Guimont II, 77 Wash.App. at 81, 896 P.2d 70. If so, the regulation is subject to an "as applied" takings analysis and we ask whether the adverse economic impact on the affected landowner outweighs legitimate state interests. Guimont I, 121 Wash.2d at 603-04, 854 P.2d 1; Guimont II, 77 Wash. App. at 81, 896 P.2d 70. We consider (1) the regulation's economic impact on the property; (2) investment-backed expectations; and (3) the character of the government action. Guimont I, 121 Wash.2d at 604, 854 P.2d 1 (citing Presbytery, 114 Wash.2d at 335-36, 787 P.2d 907).
¶ 33 But an "as applied" regulatory takings claim is not ripe until "the initial government decision maker has arrived at a definite position, conclusively determining whether the property owner was denied `all reasonable beneficial use of its property.'" Guimont II, 77 Wash.App. at 85, 896 P.2d 70 (quoting Orion Corp. v. State, 109 Wash.2d 621, 632, 747 P.2d 1062 (1987)). Only after a court concludes that a permit application for any use would be futile is an "as applied" regulatory takings claim ripe for review. Orion Corp., 109 Wash.2d at 632, 747 P.2d 1062; Ventures Nw. Ltd. P'ship v. State, 81 Wash. App. 353, 368-69, 914 P.2d 1180 (1996).
¶ 34 This determination is necessary because an "as applied" regulatory takings claim requires the court to compare the present value of the regulated property and the value of the property before imposition of the regulation to determine whether the regulation has diminished the economic uses of the land to such an extent that an unconstitutional taking has occurred. Ventures Nw., 81 Wash.App. at 368, 914 P.2d 1180. The court in Presbytery explained that "[o]ur cases uniformly reflect an insistence on knowing the nature and extent of permitted development before adjudicating the constitutionality of the regulations that purport to limit it." 114 Wash.2d at 338, 787 P.2d 907 (quoting MacDonald, Sommer & Frates v. County of Yolo, 477 U.S. 340, 351, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986)).
¶ 35 Here, Peste's "as applied" challenge to Mason County's CP and DRs is not yet ripe. Although the Board reached a final determination that it would prohibit rezoning the Section 21 property from an RR 20 designation to an RR 5 designation, it did not determine what uses would be permitted on the property. Moreover, Peste has not shown that it would be futile to pursue other uses of the Section 21 property.

b. Substantive Due Process
¶ 36 The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Substantive due process claims ripen immediately because the harm occurs at the time of the violation. In this case, it occurred when Mason County adopted its CP and DRs. See Sintra, Inc. v. City of Seattle, 119 Wash.2d 1, 21 n. 11, 829 P.2d 765 (1992). Thus, we consider Peste's substantive due process claim.
¶ 37 To determine whether a regulation violates due process, we employ a three prong due process test. Guimont I, 121 Wash.2d at 609, 854 P.2d 1. We must determine (1) whether the regulation is aimed at achieving a legitimate public purpose; (2) whether it uses means that are reasonably necessary to achieve that purpose; and (3) whether the regulation is unduly oppressive on the landowner. Guimont I, 121 Wash.2d at 609, 854 P.2d 1.
¶ 38 Here, Mason County adopted and amended its CP and DRs to comply with the GMA as the Growth Board ordered, a legitimate state purpose.[11] Further, the GMA mandates that Mason County designate both rural areas and a variety of densities within *150 its boundaries. RCW 36.70A.070(5). Mason County's designation of rural areas and densities was a means reasonably necessary to achieve the legitimate state purpose of complying with the GMA.
¶ 39 Whether Mason County's CP and DRs are unduly oppressive to Peste is the only prong of the substantive due process test we address. The "unduly oppressive" inquiry lodges wide discretion in the court and implies a balancing of the public's interests against those of the regulated landowner. Presbytery, 114 Wash.2d at 331, 787 P.2d 907. There are several factors to consider, including the nature of the harm sought to be avoided; the availability and effectiveness of less drastic protective measures; and the economic loss suffered by the property owner. Presbytery, 114 Wash.2d at 331, 787 P.2d 907.
¶ 40 Further, we should consider additional factors from the relative perspectives of both the public and the landowner. Presbytery, 114 Wash.2d at 331, 787 P.2d 907. On the public's side, relevant factors we consider are the seriousness of the public problem; the extent to which the owner's land contributes to it; the degree to which the regulation solves it; and the feasibility of less oppressive solutions. Presbytery, 114 Wash.2d at 331, 787 P.2d 907. On the owner's side, we consider the amount and percentage of value lost; the extent of remaining use; past, present and future uses; the temporary or permanent nature of the regulation; the extent to which the owner should have anticipated such regulation; and the feasibility of the owner altering present or currently planned uses. Presbytery, 114 Wash.2d at 331, 787 P.2d 907.
¶ 41 Here, although the limited record makes it difficult to conduct a thorough analysis, Mason County's designation of rural areas and densities is not unduly oppressive. First, unplanned growth and its resulting sprawl posed a serious problem, causing the legislature to enact the GMA. RCW 36.70A.010. Mason County's CP and DRs embody the required implementation of the GMA and serve to alleviate the problems unplanned growth and sprawl create. Second, rezoning Peste's 556 acres from an RR 20 designation to an RR 5 designation would notably contribute to the problem of sprawling development. Mason County's designation of rural areas and densities in compliance with the GMA alleviates this problem. Third, Mason County has established a variety of permitted uses and apparently allows clustered residential development in RR 20 areas,[12] calling into question (1) whether a need exists for less oppressive solutions; and (2) Peste's claimed inability to alter its current rezone request and apparent long term residential development plans to comply with the RR 20 designation and still have a financially viable development plan. Finally, Peste should have anticipated Mason County's designation of the Section 21 property in light of the parcels' natureit is entirely undeveloped, surrounded mostly by other undeveloped RR 20 properties, and is serviced by limited utility access and a single dirt road.[13]

D. SUBSTANTIAL EVIDENCE
¶ 42 Peste argues that substantial evidence does not support the Board's findings. RCW 36.70C.130(c). Mason County responds that substantial evidence supports the Board's findings. Furthermore, Peste argues that the Board's findings of fact are not findings of fact, but rather, conclusions of law. The Board's findings of fact six and *151 seven seem to be mixed findings of fact and conclusions of law. We nevertheless determine whether the Board correctly applied the law to the facts of the case, i.e., employing both the substantial evidence standard and the clearly erroneous standard outlined under LUPA. RCW 36.70C.130(1)(c), (d).
¶ 43 "[S]ubstantial evidence" is evidence sufficient to convince an unprejudiced, rational person that a finding is true. Isla Verde Int'l Holdings v. City of Camas, 146 Wash.2d 740, 751-52, 49 P.3d 867 (2002). This factual review is deferential, requiring us to view all the evidence and reasonable inferences "in the light most favorable to the party who prevailed in the highest forum that exercised fact-finding authority ..." Freeburg v. Seattle, 71 Wash.App. 367, 371-72, 859 P.2d 610 (1993) (quoting State v. County of Pierce, 65 Wash.App. 614, 618, 829 P.2d 217 (1992)).
¶ 44 The clearly erroneous test under standard (d) involves applying the law to facts. RCW 36.70C.130(d); Cingular Wireless, 131 Wash.App. at 768, 129 P.3d 300. Under that test, we determine whether we are left with a definite and firm conviction that a mistake has been committed, even though there is evidence to support a finding. Wenatchee Sportsmen Ass'n, 141 Wash.2d at 176, 4 P.3d 123; Cingular Wireless, 131 Wash.App. at 768, 129 P.3d 300. Here we are also deferential to factual determinations by the highest forum below that exercised fact finding authority. Pioneer Park, 106 Wash.App. at 473, 24 P.3d 1079.
¶ 45 Substantial evidence supports the Board's findings. The Board determined that the Section 21 property was large (about 556 acres) and undeveloped and surrounded by other large, undeveloped properties with identical RR 20 designations to the east, west, and south. Further, the Board determined that the Section 21 property lacked infrastructure and was serviced only by a power line and a dirt road[14] that Peste's attorney stated could be "described as a road or a trail or an obstacle course, but it leaves much to be desired." Report of Proceedings at 12. The Board also determined that the Section 21 property has no water service and contains "critical areas" as defined in Mason County DR 1.06. Peste provides no argument to refute evidence supporting these findings.
¶ 46 Similarly, the Board did not commit clear error in applying those facts to its CP and DRs. In fact, although Peste assigns error to the Board's findings of fact, it fails to state any issue related to those assignments of error, focusing instead on its arguments that the CP and DRs are procedurally void, denied it due process, or constitute a taking.[15]
¶ 47 But these findings were the primary basis for the Board's decision to deny Peste's rezone request because the rezone did not conform with the County's CP and DRs. The Board's conclusion was not an erroneous application of the law to the specific facts presented by Peste's rezone request. See RCW 36.70C.130(d). Mason County's CP and DRs designated rural areas and a variety of development densities and permitted uses in those areas in compliance with the GMA. RCW 36.70A.011, .070(5). The GMA encourages development in established urban areas, open space retention, the preservation of rural areas, the protection of critical areas, and discourages sprawling low density rural development. RCW 36.70A.011, .020. The Board determined that rezoning the Section 21 property, an undeveloped rural parcel, would contravene its CP, DRs, and the GMA's goals.
¶ 48 Given (1) the location and characteristics of the Section 21 property, (2) Mason County's seven year amendment process to fully comply with the GMA, and (3) the availability of other development options for the *152 Section 21 property, the Board's decision was reasonable and we find no error.
¶ 49 We affirm.
We concur: HUNT, J., and QUINN-BRINTNALL, C.J.
NOTES
[1] This appeal does not deal with any land use applications other than the 2001 rezone request by Peste. Therefore, we do not address whether any rights exist under the completed 1997 plat application.
[2] Peste asserts that three parcels are "involved in these proceedings." Br. of Appellant at 1. In fact, Peste is appealing only the Board's denial of its rezone request for two adjacent parcels, generally considered a single property, or the Section 21 property.
[3] Chapter 36.70C. RCW.
[4] Mason County DR 1.04.240. These designations are not codified in the Mason County Code.
[5] A parcel designated as RR 20 may have a maximum of one residence per 20 acres of property. A parcel designated as RR 5 may have a maximum of one residence per five acres of property. See Mason County DR 1.03.032 and DR 1.04.220, .240.
[6] The RR 5 areas are residential developments Sunnywoods and Lake Limerick.
[7] One dwelling unit per 10 acres.
[8] At oral argument, Peste discussed at length its position that the County had to give adequate, if not actual, notice of land use actions affecting its property. We are not unsympathetic to Peste's argument. There is increasing public concern about a systematic erosion of actual, or even practically adequate, notice of actions affecting landowners. Given actual notice of assessed value for each parcel, it does not seem unduly burdensome for governments to provide actual notice of governmental actions affecting land. Whether such notice is legally required, it appears short-sighted to decrease public participation in such processes and the better practice in order to create and sustain confidence in the fairness of government is inclusion and adequate notice. Cf. Habitat Watch v. Skagit County, 155 Wash.2d 397, 120 P.3d 56 (2005) (Sanders, J., dissenting in part).
[9] RCW 36.70A.290(2)(b) required Mason County to publish notice of its adoption of any CP, DR, or permanent amendment to the CP or DRs. The record shows that Mason County published notice of its adoption of its original CP in 1996 and its amended version in 1998. But the record does not indicate whether Mason County published notice of any of the amendments made after 1998. Similarly, Peste nowhere contends that Mason County did not publish notice of its adoption of amendments after 1998. We will not consider matters outside the record or issues not briefed. Weems v. N. Franklin Sch. Dist., 109 Wash.App. 767, 778-79, 37 P.3d 354 (2002).
[10] In Peste's substantive due process and takings claims, Peste cites the United States Constitution, amendments V and XIV and the Washington Constitution, article I, sections 3 and 16, without applying the law to the facts of the case. The heavy burden of establishing that a regulation results in a constitutional violation is on the party challenging the regulation. Lund v. Dep't of Ecology, 93 Wash.App. 329, 339, 969 P.2d 1072 (1998). We do not address constitutional arguments that are not supported by adequate briefing. Havens v. C & D Plastics, Inc., 124 Wash.2d 158, 169, 876 P.2d 435 (1994). Despite Peste's lackluster briefing on its constitutional claims, we consider them because the record is sufficient here.
[11] We affirmed the Growth Board's first order of noncompliance issued in December 1996. Diehl v. Mason County, 94 Wash.App. 645, 663, 972 P.2d 543 (1999). Mason County did not appeal any of the Growth Board's subsequent noncompliance orders.
[12] Permitted uses in RR 20 areas include single family residences; small scale commercial agriculture, including aquaculture and woods lots; churches; local community and recreation centers; fire stations; fish hatcheries; cell towers; public utilities; and "[c]ottage industr[ies]." Mason County DR 1.04.242(B). The permitted uses are virtually the same for both RR 5 and RR 20 densitiesthe residential development density is the only difference. See Mason County DR 1.04.222. Moreover, Mason County Board and Commission staff testimony indicates that Peste's residential development options under its current RR 20 designation are more opportunistic than Peste asserts and that clustered residential development is available to Peste on its RR 20 properties.
[13] With the minimal record available, it is unclear what economic loss may have resulted to the Section 21 property from its RR 20 designation.
[14] The record is unclear whether this road is public or private. There is no documentation that it is public, but Peste argues in its brief that it has been dedicated by common law. But Peste's attorney and Ken Martig, a civil engineer testifying in favor of the proposal, testified before the Board that the road is private.
[15] Peste devotes one paragraph to its insufficient evidence challenge, therein reciting Peste's proposed findings.