# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| LEO MCMILIAN, an individual, | ) | DIVISION ONE |
| | ) | |
| Appellant, | ) | No. 70515-6-I |
| | ) | |
| v. | ) | |
| | ) | |
| KING COUNTY, a Washington | ) | UNPUBLISHED OPINION |
| municipal corporation, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| SHERRY MCMILIAN, an individual, | ) | |
| | ) | |
| Defendant. | ) | FILED: November 3, 2014 |
| | ) | |

DWYER, J. — In McMilian v. King County, 161 Wn. App. 581, 605, 255 P.3d 739 (2011) (hereinafter McMilian I), we remanded this land use dispute to the county "hearing examiner for a decision, based on the existing record, as to whether McMilian established that the wrecking yard use was extant on the southern parcel prior to 1958." The hearing examiner determined the question adversely to McMilian. Finding no error in the procedure employed or the determination made, the superior court affirmed the hearing examiner's decision—as do we.

I

Leo McMilian owns two adjacent parcels of land in unincorporated King County. He currently operates an automobile wrecking yard on both parcels.

McMilian purchased the northern parcel and the wrecking yard business associated with that property in 2002. Several months later, McMilian purchased the southern parcel. Both parcels are currently zoned for residential use.

In 1958, King County's zoning ordinances were amended such that a wrecking yard use was prohibited in the area. Because the northern parcel had been used for a wrecking yard business prior to 1958, the wrecking yard use on the northern parcel remained a valid nonconforming use. Prior to 2002, some owners of the northern parcel had also used part of the southern parcel for the wrecking yard business; thus, at times, the wrecking yard "bulged" past the boundaries of the northern parcel.

In 2005, McMilian cleared the southern parcel of much of its vegetation, placing numerous vehicles thereon. Thereafter, the King County Department of Development and Environmental Services (DDES) investigated complaints regarding the southern parcel.

In 2007, DDES issued a notice and order alleging various violations of the King County Code (KCC). McMilian administratively appealed the notice of violation to the Office of the Hearing Examiner for King County. The hearing examiner at the time was Peter Donahue. McMilian argued, in part, that the operation of the wrecking yard on the southern parcel was a valid nonconforming use because the wrecking yard business had spilled over onto the southern parcel for many years.

On May 26, 2009, after an administrative hearing, the hearing examiner issued his report and decision. The hearing examiner found, in pertinent part:

4.     An auto wrecking business has long been conducted on the property directly abutting to the north, under a series of ownerships. During prior ownerships, some spillover of the auto wrecking operation occurred onto the subject property, which was not owned by the prior ownerships of the auto wrecking business (it was purchased by [McMilian] after their purchase of the main Astro Auto Wrecking site abutting to the north). The spillover consisted of storage of some wrecked and dismantled cars and numerous junk auto parts and tires. The property was not utilized in active auto wrecking operations as was the main operation to the north.

7.     Upon their purchase of the subject property, the Appellants in or around 2005 commenced clearing of the subject property of its significant overstory and underbrush vegetation and removal of a substantial amount of auto parts, tires, a few vehicles, etc. The tree cover was so substantial that the vehicles, auto parts, etc., were not visible (at least not easily discernible) from aerial photographs taken prior to the time of clearing.

13.     After the clearing and grading activity was performed onsite, the Astro Auto Wrecking business expanded substantially onto the subject site, utilizing essentially its entirety for storage of and processing of wrecked vehicles, in some areas stacking them vertically, utilizing typical wrecking yard equipment for stacking, hauling and moving wrecked vehicles and auto parts.  The subject property is utilized essentially as an equal component of the previously established auto wrecking yard abutting to the north, as one whole operation.  The subject property is accordingly no longer simply a spillover site for informal and minor storage and indeed dumping of parts and vehicles.

The hearing examiner upheld all of the violations alleged in the notice and order and, reasoning that any prior wrecking yard use of the subject parcel would have constituted a trespass, concluded that "[t]he subject property does not benefit from a nonconforming use right to an auto wrecking yard or an auto storage yard."

McMilian judicially challenged the hearing examiner's decision and the

superior court reversed. On further appeal, we reversed the superior court. As we explained in our opinion, "The hearing examiner did not make any finding with regard to whether the wrecking yard use was established on the southern parcel *prior to 1958*, only that it 'has long been conducted' *on the northern parcel* and that some spillover had occurred onto the southern parcel." McMilian I, 161 Wn. App. at 603. Our opinion required further resolution of a single issue: "We remand the matter to the hearing examiner for a decision, based on the existing record, as to whether McMilian established that the wrecking yard use was extant on the southern parcel prior to 1958." McMilian I, 161 Wn. App. at 605. The clerk's mandate issued on June 17, 2011.

Donahue's tenure as King County Hearing Examiner ended on June 15, 2012. Prior to then, Donahue assigned McMilian's case to Stafford Smith, a hearing examiner pro tem. Donahue informed counsel for both King County and McMilian via e-mail that Smith would assume responsibility for resolution of the matter on remand. Neither party objected.

On June 28, 2012, the hearing examiner submitted a supplemental report and decision on remand. Therein, he concluded that McMilian did not meet "his burden of proof to establish that a valid nonconforming use existed on [the subject parcel] in 1958 prior to the adoption of King County zoning regulations." McMilian filed a land use petition in superior court, challenging the decision.

The superior court denied McMilian's appeal. The court concluded that the hearing examiner's decision was supported by substantial evidence and that McMilian's due process rights had not been violated. The superior court

reasoned:

> McMilian has the burden to prove that a lawful wrecking yard use existed in 1958 and that it was more than intermittent or occasional. In his testimony regarding the condition of the property when he was 10 years old Richie Horan disclaimed knowledge of property lines. Helene Mecklenburg's description of the property as fenced is not conclusive, but weighs against McMilian, and Smith's reliance on the 1945 tax form describing a residential property, and the 1960 aerial photo was proper. The aerial photograph showed no evidence of active wrecking yard use of the subject parcel. The mere possibility of wreckage under the tree canopy is not sufficient to establish the existence of a substantial use.

This appeal follows.

## II

Judicial review of land use decisions is governed by the Land Use Petition Act, chapter 36.70C RCW. We sit in the same position as did the superior court and apply the standards set forth in RCW 36.70C.130(1) to the administrative record that was before the body responsible for the land use decision. Whatcom County Fire Dist. No. 21 v. Whatcom County, 171 Wn.2d 421, 426, 256 P.3d 295 (2011). In order to set aside a land use decision, the party seeking relief must establish that one of the following standards is satisfied:

> (a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;
> (b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
> (c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;
> (d) The land use decision is a clearly erroneous application of the law to the facts;
> (e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or

(f) The land use decision violates the constitutional rights of the party seeking relief.

RCW 36.70C.130(1). "Standards (a), (b), (e), and (f) present questions of law, which we review de novo." Abbey Rd. Grp., LLC v. City of Bonney Lake, 167 Wn.2d 242, 250, 218 P.3d 180 (2009). On review of a decision that presents mixed questions of law and fact, we determine the law independently and apply it to the facts as found by the hearing examiner. Miller v. City of Bainbridge Island, 111 Wn. App. 152, 161, 43 P.3d 1250 (2002).

III

We remanded this case for the hearing examiner to decide whether McMilian established that the wrecking yard use was extant on the southern parcel prior to 1958. In response to our mandate, the hearing examiner found that McMilian failed to prove that an auto wrecking yard existed on the subject parcel at that time.[1] This is the factual finding on which we focus our sufficiency of the evidence review pursuant to RCW 36.70C.130(1)(c).[2]

"We defer to the hearing examiner on factual determinations and, under [RCW 36.70C.130(1)(c)], we will not overturn the examiner's findings of fact unless they are not supported by evidence that is substantial in view of the entire record before the examiner." Miller, 111 Wn. App. at 162. "'Substantial evidence exists where there is a sufficient quantity of evidence in the record to persuade a

---

[1] The hearing examiner denominates this factual finding as a "conclusion." No matter the label he attaches to it, this "conclusion" is a response to our directive that the hearing examiner decide a factual issue on remand. We, therefore, review it for what it is—a factual finding.

[2] McMilian challenges a number of other findings. As the finding we examine above is dispositive, we need not address whether each of the other challenged findings is also supported by substantial evidence.

fair-minded, rational person of the truth of the finding.'" Hilltop Terrace

Homeowner's Ass'n v. Island County, 126 Wn.2d 22, 34, 891 P.2d 29 (1995)

(quoting State v. Maxfield, 125 Wn.2d 378, 385, 886 P.2d 123 (1994)). Our

review is deferential. We view the evidence and any reasonable inferences

therefrom in the light most favorable to the party that prevailed in the highest

forum exercising fact finding authority.[3] Schofield v. Spokane County, 96 Wn.

App. 581, 586, 980 P.2d 277 (1999).

The hearing examiner reviewed and considered all of the evidence in the

record pertinent to the question assigned on remand. This consisted mostly of

documentary evidence, including: an aerial photograph taken in 1960 that

showed the wrecking yard parcel next to the vegetated subject parcel; a tax

record from 1945 that showed and described a residence on the subject parcel;

and affidavits submitted by Helene Mecklenburg, who owned the subject parcel

in 1958, and various of McMilian's customers. He also considered the

transcribed testimony of Richard "Ritchie" Horan.[4] After considering the

evidence, the hearing examiner found the aerial photograph and the tax record

most compelling.

---

[3] Because Donahue, rather than Smith, presided over the evidentiary hearing itself, McMilian calls upon us to determine whether Smith's assessment of the credibility of the evidence is entitled to any deference. McMilian's question is merely theoretical in the context of this case, given that Smith included only one relevant credibility determination in his report—finding that McMilian had diminished credibility given his possible motivation to conform his testimony to serve his personal interests in the case—and his determination of the key factual question was not based on the manner of presentation of any witness at the evidentiary hearing. We need not opine on a theoretical inquiry in order to resolve this dispute.

[4] Horan visited the wrecking yard in his youth with his father, who was a mechanic. He also owned the northern parcel and wrecking yard business from 1977 until 2002, when it was purchased by McMilian.

By contrast, the hearing examiner found that the affidavits were "sufficiently defective as to preclude placing reliance upon any of them." He noted that the affidavits were vague and provided no solid basis of knowledge regarding property boundaries. Because he found all of the affidavits to be "fundamentally flawed documents," he did not rely on any of their averments in reaching his conclusion.

In addition, although the hearing examiner credited Ritchie Horan's testimony regarding his memories of visiting the wrecking yard as a child, he concluded that it "hardly qualifies as a strong positive identification" of the boundaries of the wrecking yard. Although Horan had some relatively clear recollections of the wrecking yard and related structures from his childhood visits, he "was unaware of property lines" at the time. Horan also attempted to reconcile aerial photographs with his recollections but struggled to identify the terrain and structures pictured in the photographs.[5]

The hearing examiner focused on the remaining documentary evidence—the tax record from 1945 and the aerial photograph taken in 1960. Based on evidence that the property was freshly logged in 1945, the hearing examiner made a reasonable inference as to the height of the trees shown on the subject parcel in the aerial photograph. The hearing examiner declined McMilian's

---

[5] For example, McMilian's counsel's examination of Horan included the following exchange:

A: You showed this to me earlier.

Q: Yes. I did.

A: And I have a hard time with it. . . . But it's hard to determine exactly, but the terrain is right.

invitation to speculate that wreckage could have been stored under the tree cover, concluding that it was an "improbable hypothesis."

In the end, the hearing examiner concluded:

The only completely reliable item of evidence bearing on the status of parcel 9038 in the 1958 timeframe is the 1960 aerial photograph appearing at exhibit no. 21. It shows an auto wrecking yard well established on parcel 9005 with no apparent extension southward over the boundary onto parcel 9038. Further, the visual context depicted in that timeframe discloses no necessity for the existing auto salvage yard on parcel 9005 to expand beyond its boundaries. As shown in the 1960 aerial photograph, parcel 9005 itself still retained ample unused area for the placement of more vehicles, especially near its northwest corner.

The hearing examiner was entitled to credit some evidence and to decline to credit other evidence. His conclusion that McMilian did not establish that an auto wrecking yard use existed on the subject parcel prior to the enactment of the 1958 zoning ordinance was supported by substantial evidence in the record.

IV

McMilian next contends that, pursuant to RCW 36.70C.130(1)(d), the hearing examiner's decision constituted a clearly erroneous application of the law to the facts.

One who asserts a prior legal nonconforming use bears the burden of proving, inter alia, that the use existed before the county enacted the zoning ordinance. First Pioneer Trading Co. v. Pierce County, 146 Wn. App. 606, 614, 191 P.3d 928 (2008). The use must have been more than intermittent or occasional prior to the change in the zoning legislation. McMilian I, 161 Wn. App. at 591. The hearing examiner found as a fact that the wrecking yard use was not

established on the subject parcel in 1958, when the zoning ordinance was enacted. Therefore, it necessarily follows that McMilian did not carry his burden of proving a nonconforming use. The hearing examiner's conclusion was proper.[6]

## V

McMilian's next set of challenges is directed at the scope of the hearing examiner's decision. McMilian contends that the hearing examiner "engaged in unlawful procedure" by (1) addressing the credibility of the evidence and (2) violating the scope of our directive on remand by, for example, making a finding that was not required.[7] We disagree.

McMilian identifies two sources of prescribed process in this case: the KCC and this court's mandate on remand. KCC 20.24.080 provides:

The examiner shall receive and examine available information, conduct open record public hearings and prepare records and

---

[6] McMilian next contends that, pursuant to RCW 36.70C.130(1)(b), the hearing examiner's decision was an erroneous interpretation of the law, because the hearing examiner concluded that no legal nonconforming use could be found absent evidence that it had been consistently used to a "sufficient degree." This is a mischaracterization of the hearing examiner's analysis. In the facts section of his report and decision, the hearing examiner identified the issue presented on remand as: "whether the intrusion of an auto wrecking yard use onto [the subject parcel] occurred prior to 1958 in sufficient degree to support a determination that it too is entitled to recognition as the location of a legal non-conforming auto wrecking yard use." However, in the conclusions section of his report and decision, the hearing examiner clarified the law that he applied to the case. He stated: "[T]he [McMilian I] opinion requires that to establish a valid nonconforming [use] it must be demonstrated to have been 'more than intermittent or occasional prior to the change in the zoning legislation.'" This subsequent explication clarifies that what the hearing examiner meant by "sufficient degree" was "more than intermittent or occasional." This is a correct statement of the law.

[7] McMilian frames the hearing examiner's actions as violations of subsections (a) and (e) of RCW 36.70C.130(1). However, McMilian's argument that the hearing examiner's decision was outside his authority or jurisdiction under subsection (e) must be based on an implied argument that the hearing examiner violated the prescribed process under subsection (a). Otherwise, there is no possible argument that a hearing examiner does not have the authority or jurisdiction to examine the evidence and make factual findings. Therefore, we address only the argument as to subsection (a).

- 10 -

reports thereof, and issue final decisions, including findings and conclusions, based on the issues and evidence in the record.

This process was restricted by our decision in McMilian I, which provided: "We remand to the hearing examiner for a decision, *based on the existing record*, as to whether McMilian established that the wrecking yard use was extant on the southern parcel prior to 1958." 161 Wn. App. at 605 (emphasis added). Thus, the modified process prescribed for this case eliminated any requirement (or allowance) that additional hearings be held.

McMilian first contends that the hearing examiner perpetrated a statutory violation by addressing the credibility of the evidence. Despite McMilian's assertion, making credibility determinations does not run afoul of any requirement of the prescribed process. In fact, it falls squarely within the mandate that the hearing examiner "examine available information" and "issue [a] final decision[]." Therefore, the hearing examiner did not violate RCW 36.70C.130(1)(a) by evaluating the credibility of the evidence in the record.[8]

McMilian's second contention is that the hearing examiner acted outside the scope of our mandate by entering a conclusion as to whether the presumption of permissive use applied in this case. Even the hearing examiner acknowledged that this conclusion was not strictly within this court's directive. Indeed, he began the challenged conclusion by noting, "Although not strictly required by this decision on remand . . . ." However, the hearing examiner also made a factual finding that the wrecking yard use was not established on the

---

[8] Any potential due process violations are examined in section VI, B.

subject parcel in 1958, when the zoning ordinance was enacted. From that it necessarily followed that McMilian had not carried his burden of proving a nonconforming use on the subject parcel. Therefore, any error arising from the hearing examiner's alleged failure to follow the process prescribed by this court on remand was harmless as a matter of law.[9] The challenged conclusion is merely surplusage.

## VI

McMilian's third set of complaints relates to the process used by the Hearing Examiner's Office in assigning McMilian's case to Smith for decision. McMilian contends that (1) it was a statutory violation for a pro tem hearing examiner to decide his case on remand and (2) the delay after this court's remand, which resulted in Smith deciding the case instead of Donahue, violated McMilian's constitutional due process rights. We disagree. The process utilized by the Hearing Examiner's Office on remand did not violate any statutory or constitutional directives.

## A

McMilian asserts that it was a violation of RCW 36.70C.130(1)(a)[10] for a pro tem hearing examiner to decide his case. This is so, he contends, because "The [KCC] does not permit . . . a pro tem hearing examiner to issue decisions

---

[9] McMilian further challenges other actions taken by the hearing examiner on remand, including that the hearing examiner "opined on who should have testified at the hearing," App.'s Amended Br. at 35, and "took a much more aggressive role in formulating his own independent opinion on the evidence and case." App.'s Amended Br. at 37. We disagree that any of the other actions of which McMilian complains were outside the scope of activities that were appropriate for the hearing examiner to undertake on remand.

[10] Again, McMilian frames the hearing examiner's actions as violations of subsections (a) and (e) of RCW 36.70C.130(1). See, infra, n. 7.

after the conclusion of an administrative hearing; the Code only permits a pro tem hearing examiner to hear pending applications and appeals." App.'s Amended Br. at 34 (bold face and italicization omitted). His assertion is unavailing.

King County permits the use of pro tem hearing examiners pursuant to KCC 20.24.065, which provides: "The chief examiner may hire qualified persons to serve as examiner pro tempore, as needed, to expeditiously hear pending applications and appeals."

In asserting that the foregoing provision is inapposite, McMilian mischaracterizes the record. Contrary to McMilian's assertion, the hearing examiner on remand did not simply "issue [a] decision[] after the conclusion of an administrative hearing." Rather, he resolved McMilian's case according to the case-specific prescribed process. As mandated by this court, the hearing examiner did not conduct any additional hearings but, rather, completed the remaining requirements for resolving the case, including examining the evidence and issuing a final decision on the question presented.[11,12]

---

[11] McMilian also contends that the County violated prescribed process because McMilian's case was assigned to Smith by someone other than Donahue. McMilian's contention is contrary to the record, which includes an e-mail from Donahue to Smith, on which counsel for McMilian and the County were both copied, assigning McMilian's case to Smith. The e-mail reads as follows:

> Stafford [Smith]- as we just discussed, I am assigning to you the above case to respond to the COA remand of the trespass issue. As noted, the remand calls for the issue to be addressed on the existing evidentiary record. Post-remand briefing of the issue has been submitted by the parties, represented by Jean Jorgensen for Appellant McMilian and Cristy Craig for Respondent DDES.
> Pete [Donahue]

[12] McMilian also alleges that it was a due process violation for Smith to decide his case. However, any constitutional argument challenging the process of appointing Smith is foreclosed by the undisputed fact that McMilian never objected to Smith deciding his case until after the

B

McMilian also contends that the delay in deciding the case after remand by this court violated his due process rights.[13,14] The focus of McMilian's due process claim is that it was a violation to substitute Smith for Donahue as decision-maker.[15] We conclude that no due process violation is established.

---

decision was rendered. See State v. Holmes, 12 Wash. 169, 174, 179, 40 P. 735 (1895) ("It will be presumed . . . that a man acting in a public office has been rightly appointed.") (holding that the acts of a de facto judge were conclusive against a defendant who was tried before the judge and who did not timely raise any objection to the judge presiding over the matter, notwithstanding that the commission of the judge was later alleged to be invalid).

[13] McMilian also makes arguments based on alleged delays occurring prior to our initial review of this matter. These claims are barred. See RCW 36.70C.040(3)-(4) (setting forth timeliness requirements for the commencement of review of a land use decision).

[14] McMilian also contends that the delay between this court's remand and the hearing examiner's decision violated RCW 36.70C.130(1), because the delay violated the prescribed process. However, McMilian does not direct us to any KCC provision, mandate of this court, or other authority that sets forth a time frame within which decisions must be made in cases on remand from this court. In fact, at oral argument, counsel for McMilian acknowledged that no such authority exists. The claim, therefore, merits no further discussion.

[15] In his merits briefing, McMilian attempts to make a separate argument that the time delay in itself violated due process. However, in making that argument, McMilian consistently relates the delay to the substitution of decision makers, such that the arguments collapse. See, e.g., App.'s Amended Br. at 31-33. Moreover, at oral argument, McMilian's counsel conceded that his due process claim rests on the substitution of Smith for Donahue.

In any event, McMilian's claim that the time delay alone violated his due process rights rests on two distinguishable cases—Barry v. Barchi, 443 U.S. 55, 99 S. Ct. 2642, 61 L. Ed. 2d 365 (1979), and State v. Smith, 68 Wn. App. 201, 842 P.2d 494 (1992).

First, any comparison to Smith is inapt, given that it involved a claimed violation of article I, section 10 of the Washington Constitution, prohibiting "unnecessary delay" in criminal appeals. The decision did not analyze a claimed due process violation. See Smith, 68 Wn. App. at 209.

Second, the administrative process that was found to violate due process in Barchi is unlike the process McMilian received. See 443 U.S. 55. Barchi involved a New York regulation specifying the standards of conduct that horse trainers must satisfy to keep their licenses. 443 U.S. at 57-59. Under the regulation, if a postrace test revealed the presence of drugs in a horse's system, the trainer's license could be subject to an interim suspension prior to a hearing, with the opportunity for a hearing to be scheduled later. Barchi, 443 U.S. at 59-61.

The Supreme Court held that the prehearing suspension process did not violate due process, but concluded that it was unconstitutionally applied to Barchi, the horse trainer, because his postsuspension hearing was not timely held. Barchi, 443 U.S. at 63-64. The Court noted that "'[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.'" Barchi, 443 U.S. at 72 (internal quotation marks omitted) (quoting Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2 18 (1976)). Because "the consequences to a trainer of even a temporary suspension can be severe," nothing in the regulation "assured a prompt proceeding and prompt disposition of the outstanding issues between Barchi and the State," and because the Court could "discern little or no state interest" in

Procedural due process constrains governmental decision making that deprives individuals of property interests within the meaning of the due process clause. Mathews v. Eldridge, 424 U.S. 319, 332, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). It is a flexible concept, and the exact contours are determined by the particular situation. Mathews, 424 U.S. at 334. The essential elements are notice and an opportunity to be heard. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, 105 S .Ct. 1487, 84 L. Ed. 2d 494 (1985) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950)).

In order to succeed on a due process claim, McMilian must prove that he was actually prejudiced by the lack of process afforded to him. See Wilburn v. Astrue, 626 F.3d 999, 1003 (8th Cir. 2010) (quoting Briones–Sanchez v. Heinauer, 319 F.3d 324, 327 (8th Cir.2003)).

It is well established that an agency may substitute its judgment for that of an examiner on factual questions, including the credibility of witnesses observed by the examiner and not by the agency. Fed. Commc'ns Comm'n v. Allentown Broad. Corp., 349 U.S. 358, 364, 75 S. Ct. 855, 99 L. Ed. 1147 (1955). Due process in administrative proceedings does not require that the testimony be

---

appreciable delay, the Court concluded that there was a constitutional violation. Barchi, 443 U.S. at 66.

Unlike Barchi, McMilian has had many opportunities to be heard. In 2008, Donahue conducted a full evidentiary hearing over multiple days. McMilian presented evidence, questioned the evidence against him, and appealed two adverse decisions to this court. See Sys. Amusement, Inc. v. State, 7 Wn. App. 516, 518, 500 P.2d 1253 (1972) ("The [due process] clause is a protection against arbitrary action by the state; but if a person has his day in court, he has not been deprived of due process."). Moreover, in clear contrast to Barchi, whose license was suspended without a hearing, McMilian has continued to use the subject parcel as a wrecking yard throughout the long, protracted life of this dispute.

evaluated by an officer who heard and observed the witnesses. Nat'l Labor Relations Bd. v. Stocker Mfg. Co., 185 F.2d 451, 453 (3rd Cir. 1950);[16] see also Wilburn, 626 F.3d at 1003 ("We long ago stated, 'A change in personnel occurring during the course of or at the close of an administrative hearing does not as such give rise to constitutional repugnance in a decision or order made by the administrative tribunal on the basis of the previous hearing.'" (quoting Gamble–Skogmo, Inc. v. Fed. Trade Comm'n, 211 F.2d 106, 112 (8th Cir. 1954))); Twin City Milk Producers Ass'n v. McNutt, 122 F.2d 564, 569 (8th Cir. 1941) ("It is well settled that a change of personnel in an administrative agency or tribunal during the course of a hearing, or at any time before the issuance of a final order on the hearing, does not invalidate the order."). Where the original hearing officer is no longer available, it does not violate due process to reassign an administrative matter to a new officer for additional findings, especially if credibility is not a central concern. Fife v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor, 888 F.2d 365, 370 (6th Cir. 1989); see also Wilburn, 626 F.3d at 1003 ("[The second ALJ's] conclusion . . . relied predominately upon inconsistencies in the medical record as opposed to credibility determinations based upon the demeanor of the witnesses, thus diminishing the need to observe the testimony personally.").

---

[16] McMilian quoted Stocker in his merits briefing. App.'s Reply Br. at 1-2. In doing so, he materially omitted the context for the quotation. The two sentences following the partial sentence he quoted provide: "The Morgan [(Morgan v. United States, 298 U.S. 468, 56 S. Ct. 906, 80 L. Ed. 1288 (1936))] opinion says that the officer who actually decides the controversy may do so on the basis of evidence taken by an examiner and thereafter sifted and analyzed by some other subordinate. Due process in administrative proceedings of the type now under consideration does not require that the testimony be evaluated by an officer who heard and observed the witnesses." Stocker, 185 F.2d at 453.

- 16 -

Credibility was not a central concern in this case. Smith made one explicit credibility determination—pertaining to McMilian—and this determination was based on McMilian's possible motivations given his status as a party and his stake in the outcome. This is a perfectly logical inference for the fact finder to draw and one that was not based on McMilian's presentation while testifying. Smith's decision relied largely on documentary evidence—including the aerial photograph, the tax record, and the affidavits—not on testimony. Moreover, the lack of prejudice to McMilian from the substitution of Smith for Donahue is demonstrated by the consistency of Smith's and Donahue's findings regarding the use of the subject parcel. Both examiners found that over the course of several different ownerships, some of the wrecking yard activities extended onto the subject property. Both examiners found that the use expanded somewhat during Horan's ownership and substantially under McMilian's ownership. These findings were entirely consistent with the evidence. The critical difference is that Donahue made no specific finding relative to 1958, whereas, pursuant to our remand order, that time frame was the focus of Smith's findings. McMilian suffered no due process violation by virtue of Smith—rather than Donahue—resolving the case on remand.[17,18]

---

[17] McMilian's reliance on Hearne v. Chicago School Reform Board of Trustees, 322 Ill. App. 3d 467, 749 N.E.2d 411 (2001), is misplaced. In that case, the credibility of witnesses was a determining factor. However, the final decision-maker (the board) overturned the hearing officer's factual findings without either conferring with the hearing officer or independently reviewing and analyzing the evidence. Indeed, the board's unsigned, substitute findings lacked any substantive discussion of the evidence or controlling legal principles. Such is obviously not the circumstance herein.

[18] McMilian also challenged the land use decision as "an unconstitutional taking and a violation of substantive due process." App.'s Reply Br. at 18.

VII

King County requests an award of reasonable attorney fees pursuant to RCW 4.84.370(2). A party is entitled to an award of attorney fees pursuant to this statute only where a land use decision of a county, city, or town is rendered in the party's favor and at least two courts affirm that decision. RCW 4.84.370(2); see also Habitat Watch v. Skagit County, 155 Wn.2d 397, 413, 120 P.3d 56 (2005) ("The possibility of attorney fees does not arise until a land use decision has been appealed at least twice: before the superior court and before the Court of Appeals and/or the Supreme Court."). King County prevailed in front of the pro tem hearing examiner and the superior court. It also prevails here. Therefore, the County is entitled to an award of reasonable attorney fees pursuant to RCW 4.84.370(2).[19]

VIII

McMilian requests an award of attorney fees pursuant to Superior Court Civil Rule (CR) 11 "for having to respond" to the County's Motion to Strike, which he contends "was not well grounded in fact, but was imposed [sic] for an improper purpose."

---

Parties raising constitutional issues must present considered arguments to this court. See, e.g., Pub. Hosp. Dist. No. 1 of King County v. Univ. of Wash., __ Wn. App. __, 327 P.3d 1281, 1289 (2014) ("'[N]aked castings into the constitutional seas are not sufficient to command judicial consideration and discussion.'" (alteration in original) (internal quotation marks omitted) (quoting State v. Johnson, 179 Wn.2d 534, 558, 315 P.3d 1090 (2014), cert. denied, 2014 WL 2763761 (U.S. Wash. Oct. 6, 2014))).

In his briefing, McMilian makes no taking argument. His substantive due process argument relies entirely on an application of a balancing test that applies to land use regulations, not to land use decisions. See Peste v. Mason County, 133 Wn. App. 456, 136 P.3d 140 (2006). McMilian has not carried his burden of establishing that the hearing examiner's decision violated his constitutional rights. See RCW 36.70C.130(1)(f).

[19] Upon proper application, a commissioner of this court will enter an appropriate order.

CR 11 is a superior court rule and does not apply to filings in this court.[20] The appellate equivalent of CR 11 is RAP 18.9. <u>Right-Price Recreation, LLC v. Connells Prairie Cmty. Council</u>, 146 Wn.2d 370, 384, 46 P.3d 789 (2002). We find no violation of RAP 18.9 by King County and, therefore, deny the request.

Affirmed.

We concur:

---

[20] 3 KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE, at 495 (7th ed. 2011) (quoting the drafters' comment to the 1994 amendment of RAP 18.7, which provides, "If sanctions are to be imposed at the appellate level, this should be done pursuant to an appellate rule, not a superior court rule. . . . The amendment to rule 18.7 strikes the reference to CR 11, so that only sanctions under the RAP's will apply."); see also 3 TEGLAND, <u>supra</u>, author's cmts. at 507-08 (explaining the purpose of the removal of all references to CR 11 in the RAP's).